### DOYLE v. COMMISSIONER OF IN-TERNAL REVENUE.

### No. 4400.

Circuit Court of Appeals, Fourth Circuit.

Feb. 28, 1939.

Richard S. Doyle, pro se, of Washington, D. C. (Blair & Korner, of Washington, D. C., on the brief), for petitioner.

S. Dee Hanson, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key and Joseph M. Jones, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and WYCHE, District Judge.

NORTHCOTT, Circuit Judge.

This is a petition to review a decision of the United States Board of Tax Appeals involving a deficiency, determined by the Commissioner of Internal Revenue, in the income taxes of the petitioner, R. S. Doyle, for the year 1932, in the amount of $2,177.20 of which $1,276.88 is in controversy. The findings of fact and opinion of the Board are reported in 37 B. T. A. 323. From the determination of the Commissioner the petitioner applied to the Board of Tax Appeals for review and, after a hearing, the Board found against the petitioner and entered an order sustaining the determination.

There is no dispute as to the facts. Petitioner resides in Bethesda, Maryland, and is an attorney practicing in Washington, D. C. He filed his income tax return with the collector in Baltimore, Maryland. He was on the cash receipts and disbursements basis.

The petitioner had been a member successively of two law partnerships, the first of which was dissolved in the year 1929 and the pending cases of the firm were divided between the Chicago and Washington partners, one Hamel and the petitioner being the Washington members of the firm. The petitioner with Hamel formed a partnership under the firm name of Hamel & Doyle. Later, in June, 1930, the firm's name was changed to Hamel, Doyle, Park & Saunders.

Among the cases taken over by petitioner's firm in the year 1929 was a claim for F. W. Woolworth Company for Federal tax refunds and, in the evaluation of the cases divided, the Woolworth cases were assigned a value totaling $5,500 on the basis of the time spent thereon up to the date of the division of the cases. Because of the excess appraisement of the Washington cases, the office furniture and fixtures and other assets over the combined shares of Hamel and petitioner in all of the assets of that firm, they paid to the Chicago partners $30,000 additional in cash for the Washington assets acquired by them.

After the formation of the new firm in Washington, other matters were alleged to have been handled for the Woolworth Company in addition to the case upon which work was being done at the time of the division. Services in the Woolworth matters were completed in January, 1931, and later, some dispute having arisen, suit was entered by the partnership for the recovery of fees alleged to have been due in the Woolworth cases.

Petitioner's firm of Hamel, Doyle, Park & Saunders agreed to dissolve as of July 7, 1931, and on August 4, 1931, an agree-

ment was entered into by all the partners for an accounting and settlement of the affairs of said partnership and two persons were appointed as liquidators of the firm's assets. This agreement specified the respective interest of the partners in the partnership property which was in accord with the basis of sharing partnership profits. Attached to the agreement were schedules of all the cases of the partnership, including two unpaid claims against the Woolworth Company for legal services rendered, one claim was already in litigation.

The liquidation of the partnership proceeded under the agreement and on December 18, 1931, the petitioner being unable to agree with the other former members of the partnership as to the most desirable legal procedure or as to the acceptance of a proposed settlement of the Woolworth claims, an agreement was entered into between Hamel and the petitioner by the terms of which Hamel agreed to pay petitioner the sum of $10,500 for his interest in the Woolworth fees. This amount was to be paid petitioner by Hamel in the event it was not collected on the Woolworth claim within six months. The amount of $10,500 was paid petitioner by Hamel in June, 1932, before the collection of any of the Woolworth claims. This agreement also included provisions with regard to the collection of other fees but the only item with which we are concerned is the one with respect to the Woolworth claims.

Petitioner in his income tax return for the year 1932 included the amount of $10,500 as gross income and claimed a deduction as capital loss of approximately $14,000 for the same year. Following a ruling that capital loss could be utilized to offset only capital gains, the taxpayer changed his original contention and claimed that the $10,500 item here in question was capital gain rather than ordinary income and took this position before the Board of Tax Appeals.

The sole issue presented is whether the amount of $10,500 received by the petitioner upon the sale of an interest in certain assets of a partnership in process of liquidation should be treated as a capital gain or as ordinary income.

The following statutes and Regulations are involved. Revenue Act of 1932, c. 209, 47 Stat. 169, 178, 191:

"§ 22.  *Gross income.*

"(a) *General definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * *."  26 U.S.C.A. § 22(a).

"§ 101.  *Capital [net] gains and losses.*

"(a) *Tax in Case of Capital Net Gain.* —In the case of any taxpayer, other than a corporation, who for any taxable year derives a capital net gain (as hereinafter defined in this section), there shall, at the election of the taxpayer, be levied, collected, and paid, in lieu of all other taxes imposed by this title, a tax determined as follows: A partial tax shall first be computed upon the basis of the ordinary net income at the rates and in the manner as if this section had not been enacted and the total tax shall be this amount plus 12½ per centum of the capital net gain.

\*     \*     \*     \*     \*     \*

"(c) *Definitions.*—For the purposes of this title—

"(1) 'Capital gain' means taxable gain from the sale or exchange of capital assets consummated after December 31, 1921.

\*     \*     \*     \*     \*     \*

"(8) 'Capital assets' means property held by the taxpayer for more than two years * * *."  26 U.S.C.A. § 101 note.

Treasury Regulations 77:

"Art. 54.  *Compensation paid in notes.*— Notes or other evidences of indebtedness received in payment for services, and not merely as security for such payment, constitute income to the amount of their fair market value. * * *."

Petitioner contends that the rights assigned by the contract of December 18, 1931, were actually or in effect a part of his interest in the partnership and, having owned that interest in the partnership since July 21, 1929, a period of more than two years, that it was a "capital asset" and that the proceeds of the sale, $10,500, constituted a "capital net gain" within the meaning of Section 101 of the Revenue Act of 1932, which should be applied against the said "capital net losses" of $14,252.93 sustained in that year.

It is contended on behalf of the respondent that the sum of $10,500 received

by the taxpayer in the year 1932 was ordinary income received for professional services and that the assignment of December 18, 1931, did not amount to the sale by the taxpayer of a capital asset but was an assignment merely of his interest in specific fees and that even should it be held that the agreement of December 18, 1931, was an assignment of capital assets, the fees assigned, having been acquired under the agreement of August 4, 1931, had not been held for two years before their disposition and therefore were not a capital asset as defined by Section 101 of the Revenue Act of 1932.

It is admitted on behalf of the petitioner that if the fees earned by the partnership had been collected and divided the proportionate amount thereof received by the respective partners would have been taxable income. The fact that the fees are in dispute and their collection delayed cannot, in our opinion, change for the purposes of taxation the character of the amount finally received, nor does the fact that by a contract of assignment to one of the other partners a sum certain is received, in lieu of a possibly greater interest, in any way affect the character of the amount received. Here the partnership was dissolved in July, 1931, and among the assets of the partnership were certain claims for fees against the Woolworth Company. By an agreement of August 4, 1931, it was provided that these fees when collected should be paid over to the petitioner in proportion to his interest in the income of the partnership. Had these particular fees been collected and his share turned over to the petitioner prior to the agreement of December 18, 1931, that money would have been taxable as ordinary income of the petitioner and the fact that he sold his interest for a fixed sum cannot in any way affect the inherent nature of the claim as being one for services rendered.

Ordinary income derived from professional services rendered is in no sense a capital asset and the sale of a claim for professional services is not a sale of capital assets. As was said by the court in Helvering v. Smith, 2 Cir., 90 F.2d 590, 592: "The commuted payment merely replaced the future income with cash." See Escher v. Commissioner, 3 Cir., 78 F.2d 815, affirming B. T. A. memorandum opinion entered May 17, 1934, 30 B. T. A. 1464. In other words, the petitioner was simply collecting in advance money that he had earned as ordinary income.

Should the taxpayer's contention prevail the device of prepayment of accrued but uncollected income would open the door to an avoidance of taxation wholly contrary to the intent of Section 101 of the Revenue Act of 1932:

As pointed out by the Board of Tax Appeals: "It is clear that there is no significance in the fact that work on the 1918-1919 case was completed in January of 1930 since that case was on a contingent fee basis and the completion of the work gave rise to no claim for a fee. It was only when that work was crowned with success in the form of a refund claim that any claim for a fee arose."

The petitioner contends that only one of the Woolworth cases was taken on a strictly contingent basis but the record shows that one was the case in which the petitioner considered the claim for the $50,000 fee to be good and he evidently considered the claim for the $600,000 fee in the other Woolworth case to be practically worthless.

The partnership of which petitioner was a member was dissolved in July, 1931. In August, 1931, an agreement was entered into as to the liquidation of the partnership and in December, 1931, the petitioner agreed to accept a fixed sum for his interest in certain specific fees. The sale under the December agreement could in no way be construed as a sale of capital assets of the partnership already dissolved and in the process of liquidation, in the good will of which the petitioner had not the slightest interest.

When he made his income tax return for the year 1932 the petitioner considered the amount in controversy to be ordinary income, taxable as such, and the Board of Tax Appeals was correct in holding to the same effect.

Affirmed.