OPINION. Van Fossan, Judge: The sole issue to be resolved in these cases is whether under the facts the gain derived by petitioner upon the purported assignment of his interest in a partnership is to be taxed as a capital gain or as ordinary income. In 1943 petitioner and Dehn formed a partnership to engage in the construction business. Each partner had an equal interest and contributed $500 toward the firm’s capital. Subsequent to its formation the partnership entered into a number of contracts pursuant to which it was engaged to supervise the construction of defense housing projects for various construction companies. Early in 1945, petitioner and Dehn decided to terminate their business relationship. Petitioner offered to sell his interest to Dehn. They sought the advice of tax counsel and were advised that they could gain the desired objective and the sale would be more clearly a sale of a capital asset if it were made to a third party. Thereupon Dehn refused petitioner’s offer and Elinor, William, and Elizabeth were procured to become the “third party” assignees of petitioner. Petitioner then assigned them his interest in the partnership in consideration of the amount of $112,-500. The firm had no liabilities and its only assets consisted of $274,-000 in accounts receivable and the $1,000 capital interest. Petitioner realized a gain of $112,000 over the amount of his original investment and contends that this represents a long term capital gain and should be taxed as provided in section 117 (b) of the Internal Revenue Code.[1] The weight of authority is to the effect that a partnership interest constitutes a capital asset and that the sale of such interest which has been held for more than 6 months is a capital transaction resulting in long term capital gain or loss. E. g., Commissioner v. Estate of Daniel Gartling, 170 F. 2d 73; McClellan v. Commissioner, 117 F. 2d 988, affirming 42 B. T. A. 124; Commissioner v. H. R. Smith, 173 F. 2d 470, affirming 10 T. C. 398, certiorari denied, 338 U. S. 818; Commissioner v. Shapiro, 125 F. 2d 532, affirming 41 B. T. A. 1339. Here, however, the partnership, prior to the date of the assignment, had completed its performance under several contracts and had substantially rendered all services required by its contract with Overland. The partnership agreement executed between Dehn and the assignees was a meaningless formality since the evidence shows that none of the parties thereto were qualified to render services or ever intended a continuation of the business. Commissioner v. Culbertson, 337 U. S. 733. The contracts by which the original partnership had been engaged to supervise the construction of proposed projects had previously been assigned to Dehn. Petitioner argues, however, that his assignees intended to and did,-in fact, engage in the partnership’s continuance through the agency of Godshall. While it is legally possible to engage in business through an agent, we are not convinced that such was the case here. True, Godshall participated in the partnership to the extent of handling its bank account and making the distribution referred to in our Findings of Fact. The query is pertinent whether he was acting as an active partner or as a liquidating trustee. Further, together with petitioner, who was also vice president of Overland, and Vincent, Overland’s superintendent of construction, he helped render such supervisory services as remained to be performed on the Overland project. But in so doing, again we may well ask whether he was acting in the interest of Overland, of which he was president, or in the interest of Elinor, William, and Elizabeth as partners in Housing Construction Company. On these two points the record is not clear. We are persuaded, however, that the so-called purchasers never engaged in the construction business of the Housing Construction Company through the agency of Godshall or otherwise, nor had they any intention of doing so at the time they executed the agreement with Dehn. Moreover, it appears that Dehn, who was not qualified alone to continue the business, took no further interest in its continuance. We recognize, of course, the general principle that a taxpayer is entitled “to decrease the amount of what otherwise would be his taxes or altogether avoid them” by any bona fide means which the law permits. Gregory v. Helvering, 293 U. S. 465, 469; Commissioner v. Tower, 327 U. S. 280, 288; and where the law is clear as to the tax consequences resulting from a particular course of action, such course of action will be given effect and governed by the clear provisions of the law even though it was followed for the primary purpose of tax avoidance. United States v. Cumberland Public Services Co., 338 U. S. 451. But when such is the primary motive of a particular transaction, that transaction should be closely scrutinized. If, after considering all of the actualities, it is found to be but a subterfuge, it may then be disregarded for tax purposes. Substance will prevail over form. Commissioner v. Tower, supra; Yiannias v. Commissioner, 180 F. 2d 115. Having thoroughly considered all of the actualities, we are firmly convinced that the Housing Construction Company was in a state of liquidation at the time the purported assignment took place; that the entire transaction was but a cloak for the purpose of decreasing petitioner’s tax on his distributive share of the profits; that the partnership purportedly formed between Dehn and the assignees must be disregarded for tax purposes; and that petitioner’s so-called assignment of his partnership interest was in fact but an assignment of his distributive share of the income due for personal services previously rendered. The sole aim of the assignment appears to have been to confer upon the assignees the power to collect a portion of the fees due petitioner. The record affords no other conclusion. But it has long been held that a taxpayer may not avoid his tax liability on income which he has earned by the simple expedient of drawing up legal papers and assigning that income to others. Commissioner v. Tower, supra; Helvering v. Horst, 311 U. S. 112; Yiannias v. Commissioner, supra. The fundamental principle in all income tax statutes is to tax income to those who earn or otherwise create the right to receive it. Lucas v. Earl, 281 U. S. 111; Helvering v. Horst, supra; Yiannias v. Commissioner, supra. Here the partnership of which petitioner was a member earned the fees due it by rendering certain personal services. Petitioner was entitled to his distributive share thereof when and as they were collected. Granted these collections would be taxable only as they were received, his proportionate part of them would, nonetheless, have been taxed to him as income whether or not distributed. Section 182 (a), Internal Revenue Code. Petitioner, however, chose to assign, at a discount, the right to receive his distributive share to Elinor, William, and Elizabeth. The consideration involved was $112,500 and was paid by a cash payment of $35,500 and the execution and delivery of a demand promissory note for $77,000. “The ‘purchase’ of that future income would not turn it into capital any more than the discount of a note received in consideration of personal services.” Helvering v. Smith, 90 F. 2d 590, 592. The cash payment of $35,500 was merely a collection in advance of the money that petitioner had previously earned as ordinary income. Doyle v. Commissioner, 102 F. 2d 86, affirming 37 B. T. A. 323. As for the promissory note for $77,000, we have found that it was-paid as payments were made to the partnership on its accounts receivable. In fact, $50,000 of the amount was distributed directly to' petitioner by the firm in a manner similar to that which would have been employed had no assignment been executed. On July 10, 1945,. Godshall informed each assignee of the method employed for making payment, whereupon they sent three identical letters to Godshall expressing their satisfaction but “requesting” that henceforward the-distributions be made to them. Each letter bore the date of July 17, 1945, and had obviously been prepared by the same person for signature by each assignee. From that time onward one-half of each payment that was made to the Housing Construction Company on its accounts receivable was distributed to Elinor, William, and Elizabeth, and they in turn paid petitioner the balance due him. As we see it, this commuted form of making distributions to petitioner did not essentially alter the substance of the transaction. Petitioner still received his distributive share of the income which he had previously helped to earn albeit in a more indirect fashion and causing a bit more delay in its receipt by him. In effect, the assignees merely acted as conduits for transmitting to petitioner his distributive share of the old partnership’s income. And the sale of this claim for ordinary income, which petitioner had earned as a result of the personal services previously rendered, is not a sale of a capital asset. Doyle v. Commissioner, supra. The fact that he chose to sell that claim at a discount does not concern us here. We are convinced that the gain of $112,000 over petitioner’s original investment constituted ordinary income to petitioner and should be taxed as such. “To hold otherwise would be to exalt artifice above reality * * *," Gregory v. Helvering, supra, and open the door to tax avoidance entirely repugnant to the meaning and intent of section 117 (b), supra. The situation here presented is to be distinguished from that in Swiren v. Commissioner, 183 F. 2d 656, certiorari denied, 340 U. S. 912, on which case petitioner relies. In that case the sale was one of a partnership interest in a going concern to the remaining partners while here we find that the partnership was in a state of liquidation at the time of the “sale.” [2] The transaction constituted nothing more than an assignment of an interest in a liquidating enterprise and of petitioner’s distributive share of the previously earned income thereof. “Nobody would suggest that the sale of a declared dividend payable in the future turns the cash received into capital.” Helvering v. Smith, supra. Accordingly, we hold that respondent did not err in his determination.- Reviewed by the Court. Decisions will be entered for the respondent. Arundell, t/., concurs in .the result. SEC. 117. CAPITAL GAINS AND LOSSES. ******* (b) Percentage Taken into Account. — In the case of a taxpayer, other than a corporation, only the following percentages of the gain or loss recognized upon the sale or exchange of a capital asset shall be taken into account in computing net capital gain, net capital loss, and net income : [[Image here]] 50 per centum if the capital asset has been held for more than 6 months. In the Swiren case, the Court of Appeals quoted approvingly the following: "The appll-cation of this rule [that the sale of a partnership interest should be treated as the sale of a capital asset] should, of course, be limited to those cases in which the transaction in substance and effect, as distinguished from form and appearance, is essentially the sate of a partnership interest.”