**WHITWORTH v. COMMISSIONER OF INTERNAL REVENUE.**

No. 10832.

United States Court of Appeals
Seventh Circuit.

June 12, 1953.

Spaulding Glass and Theodore R. Scott, Chicago, Ill., for petitioner.

H. Brian Holland, Asst. Atty. Gen., Hilbert P. Zarky, Special Asst. to the Atty. Gen., Ellis N. Slack, Special Asst. to the Atty Gen., for respondent.

George E. Cleary, New York City, amicus curiae, for Carol F. Hall and Isabel M. Hall.

Before MAJOR, Chief Judge, FINNEGAN, Circuit Judge, and BRIGGLE, District Judge.

BRIGGLE, District Judge.

This proceeding involves income tax deficiencies asserted by the Commissioner against Charles R. Whitworth and Sarah M. Whitworth, his wife (since deceased) for the taxable year 1945 in the sum of $1,099.64, and for the taxable year 1947 in

---

the sum of $1,768.88. The sole issue is whether the sum of $12,000 received by Charles R. Whitworth in each of the years in question from the accounting firm of Touche, Niven and Company was taxable income or capital gain. The Tax Court held it to be taxable income and petitioner seeks review.

Touche, Niven and Company was at all pertinent times a co-partnership of international scope engaged in an extensive business as accountants and auditors. Taxpayer became a co-partner in the firm in 1919, at which time he made a capital contribution of $12,500 to the firm. The management of the co-partnership was vested in five of the partners known as "administrative" partners, of which taxpayer became one. On October 1, 1936, the seventeen co-partners entered into a new partnership agreement, the construction of certain parts of which has an important bearing upon the question here involved.

This agreement contained the following provisions worthy of note:

"Article I, * * *. The partners shall have the right to retire or withdraw and this Agreement may be terminated as to one or more partners and new partners may be admitted under the provisions hereinafter set forth but neither such retirement, withdrawal, or termination, nor the death of any partner nor the admission of any new partner shall dissolve this partnership.

"The partners shall devote their entire time, attention and influence to the business and interests of the firm and shall not engage in any other business except with the approval of a majority in interest of the Administrative partners. * * *.

"Article IV, * * *. Section 2. In the event of the death, retirement, or withdrawal of any of the partners during the term of the partnership, the deceased, retiring or withdrawing partner shall have no interest in the firm name and shall have no right to receive any payment therefor.

"Article VII, * * *. Section 3. In the event of the death, retirement or withdrawal of any of the partners as hereinafter provided, there shall be repaid to such retiring or withdrawing partner or the legal representative of such deceased partner, in the manner provided in Section 1(o) of Article II hereof, an amount equal to his paid-up participation in the stated capital at the date of his death, retirement or withdrawal. * * *.

"Article X, * * *. Section 2. Any partner may retire from the partnership at any time after the first day of October, 1936, upon giving six (6) calendar months prior notice in writing of his intention so to do * * *. * * *. Section 4. The partnership may be terminated at any time as to any partner if a majority in interest of the administrative partners shall decide that such termination is for any reason in the best interests of the partnership, * * *. Section 5. Any partner as to whom this Agreement shall be terminated as provided in Sections 3 or 4 of this Article X shall be deemed to have withdrawn from the firm within the meaning of this Agreement and shall not be entitled to receive any payments except as provided in Section 1 of Article XI hereof. Section 6. Upon the death, retirement or withdrawal of any of the partners during the term of the partnership the interest of the deceased, retiring or withdrawing partner in the firm assets and business shall be and become vested in and transferred to the surviving or continuing partners in the proportion of their participations in the stated capital and distributable profits and the retiring or withdrawing partner or the legal representative of the deceased partner shall have no interest in or claim against the firm assets and business or the firm name except the right to receive the payments hereinafter provided for in Article XI hereof.

"Article XI. Section 1. If any partner shall die, retire or withdraw for any reason whatsoever during the term of the partnership there shall be payable to such retiring or withdraw-

ing partner or to the personal representative of such deceased partner the following payments, * * *:

"(a) Any balance standing to his credit in his current account * * *

"(b) Such proportion of the distributable profits, as defined in Article II hereof, to which he would have been entitled for the then current fiscal year * * *.

"(c) An amount equal to the sum of (1) any indebtedness due from the firm to him, other than the sums due under paragraphs (a) and (b) hereof and (2) his paid-up participation in the stated capital, as set forth in the Participating Schedule in effect at the date of his death, retirement or withdrawal. * * *".

"Section 2. If any partner shall retire pursuant to Sec. 2 of Article X hereof after attaining the age of sixty-five years or shall die at any age, there shall be payable, in addition to the amounts hereinbefore provided in paragraphs (a), (b) and (c) of Section 1 of this Article XI, to such retiring partner, or to the personal representatives of such deceased partner, out of distributable profits, such amount as may be determined by the decision of a majority in interest of the Administrative partners but in no event less than the smaller of the following: * * *." (Here follows the formulae for ascertaining the amount to be paid to a retiring partner who has attained the age of 65 years or shall have died at any age.)

"The payment under this Section 2 is intended as a distribution of income to the retiring partner or the estate of a deceased partner for a limited period subsequent to his retirement or death.

* * * The provisions for the payment to be made under this Section 2 of this Article XI are limited to the cases specifically provided for hereunder and do not apply to any partner who retires or withdraws at any other age or for any other cause. Section 3. Notwithstanding any of the provisions of this Article XI, by decision of a majority in interest of the Administrative partners, there may be paid such sum of money in such instalments as they shall deem advisable to any partner retiring before he attains the age of sixty-five (65) years or to any other partner who may withdraw for any other reason. Section 4. The amounts payable under this Article XI to a retiring or withdrawing partner and to the personal representative of a deceased partner shall be paid by the continuing or surviving partners and accepted by the retiring or withdrawing partner and by the personal representative of a deceased partner in full, final and complete settlement and satisfaction of all the claims of such retiring, withdrawing or deceased partner, as a partner against the partnership, the surviving or continuing partners, and the assets of the partnership."

In October, 1939, taxpayer wrote a letter to the copartnership reasserting his previously expressed desire to retire from the firm when he reached the age of 60 on October 12, 1943. This was followed by an exchange of letters between members of the firm and taxpayer, culminating in a letter from the firm on November 27, 1942, setting forth the terms that had been mutually agreed upon for the retirement of taxpayer on May 1, 1942, prior to his reaching the age of 60 years. This letter is set forth in full in Footnote [1]. The

I.

"TOUCHE, NIVEN & CO.
Certified Public Accountants
Eighty Maiden Lane
New York
"November 27, 1942
**"Mr. C. R. Whitworth**
*2387 Deere Park Drive*
*Highland Park, Illinois*

"DEAR SIR:

"Although all arrangements as to your retirement from the firm as of May 1, 1942 have been heretofore informally agreed upon, it seems to us advisable to incorporate our agreement in a letter signed by the firm and approved by you.

"This will confirm your retirement as a partner in the firm of Touche, Niven &

terms thus set forth were fully acquiesced in by taxpayer and by the copartnership.

Pursuant to the arrangements thus made, the taxpayer received $20,405.17 in 1942 and $20,000 in 1943 as his salary and current share of distributable profits; $12,500 on account of his capital account; $3,978.36 his share of the cash surrender value of a life insurance policy on the life of John B. Niven, none of which payments are in question in the present proceeding. In addition he received the sum of $12,000 in each of the years 1944–5–6–7 and 8 respectively or a total of $60,000 paid to him under the terms of the retirement arrangement, and it is these payments for the years 1945 and 1947 that constitute the subject matter of the present tax controversy. The taxpayer has treated this sum as a capital gain, whereas the Collector contends that this is income to the taxpayer under Section 22 of the Revenue Act, defining gross income, 26 U.S.C.A. § 22 (1946 Ed.).

It is the taxpayer's contention that the payments in question could not have been made under Sec. 2 of Article XI of the 1936 agreement, as this Section was by its terms limited to retiring partners reaching the age of 65 years or dying at any age, and that the payments should be held to be payments to the taxpayer by the co-partnership in acquisition of his interest in the firm and, therefore, a capital gain. He further asserts that for the payments to have been made under Section 2 of Article XI it would have been necessary for the co-partnership to have amended the agreement and argues that this was never done in harmony with the provisions for amendment set forth in Article XX of the agreement.

Co. as of May 1, 1942. Notwithstanding your retirement, the financial arrangements agreed upon in our agreement of October 27, 1939 shall remain unchanged and accordingly you shall be entitled to receive the following payments:

1. For the fiscal years ending September 30, 1942 and September 30, 1943 you shall receive an amount equal to your salary and interest in the distributable profits of the firm under the partnership agreement the same as though you had remained a member of the firm, except that (a) as provided in our agreement of October 27, 1939, your aggregate participation in the profits of the firm, including salary, shall not exceed an average for the four years ending September 30, 1943 of $20,000 per annum but (b) any deficiency below $20,000 per annum in any of said four years shall be made good to the extent of any excess over $20,000 available from any prior or subsequent year of said four year period, the intention being that the average for the four year period shall be determined on a cumulative basis.

"2. Notwithstanding the fact that you have not and will not have attained the age of sixty-five years on September 30, 1943, you shall be entitled to receive the retirement payments provided for in Section 2 of Article XI of the Partnership Agreement which shall be computed and be payable as if you had retired on September 30, 1943 except that, upon your request, we will accelerate the payments provided under Section 2 of Article XI so that the said payments shall be made in five instead of six years.

"3. You shall be entitled to receive the payments provided for in Section 1 of Article XI of the Partnership Agreement but, notwithstanding your retirement as of May 1, 1942, said payments shall be determined and be payable as if you had retired on September 30, 1943.

"4. It is understood that in case of your death prior to September 30, 1943 the provisions of Sections 1 and 2 of Article XI with respect to payments upon the death of a partner shall be applicable immediately.

"It is also understood that as of May 1, 1942 you have surrendered all of your interest in the firm and the firm name and assets subject only to your right to receive the payments above provided for.

"We should appreciate it if you would note your approval on the enclosed duplicate hereof and this letter and your approval shall constitute an agreement between the firm and yourself.

"Yours very truly,
Touche, Niven & Co.
By John B. Niven
(John B. Niven)
*For and on behalf of the several individuals comprising the firm of Touche, Niven & Co.*

"Approved:
C. R. Whitworth
(C. R. Whitworth)"

We think the record establishes without question that the payments aggregating $60,000 were made pursuant to an independent agreement between taxpayer and the other members of the co-partnership and while all parties, including taxpayer, apparently proceeded on the theory that they were being made by special agreement under Section 2 of Article XI, it in fact makes little difference whether they were so made or whether they were made independently of Section 2 of Article XI, although under the formulae therein enunciated. If all parties concerned were willing to bring taxpayer under a special retirement plan, harmonious on the whole, to the stated provisions of Section 2 of Article XI, no good reason appears why they should not so contract. The arrangements were fully compatible with the very generous and apparently wholesome attitude of the co-partnership in desiring to permit taxpayer on retirement to share for a limited time in the income of the firm, regardless of his future contribution of services. Whitworth, under the terms of the co-partnership arrangement, had nothing to sell to the co-partnership in the ordinary sense. It was a co-partnership calling for personal services of its members and aside from his capital contribution of $12,500 (which was returned without question here) his contribution was of himself and no doubt deemed by his associates a valuable one. He had no monetary interest in the firm name and his retirement or withdrawal in no way affected the continuance of the co-partnership. He had no undivided, vested interest in whatever the firm may have owned in physical assets or bills receivable, but only the right upon retirement to receive certain of the various amounts hereinbefore referred to.

The fact that taxpayer received from the firm more than he had a right to demand is no indication that the sums received were in payment for any interest in the firm or that they became upon receipt an enhancement in his capital assets as distinguished from income. The wholesomeness of the co-partnership arrangement was aptly expressed by one of the younger members of the firm who said: "I felt that the agreement entailed mutual advantages. Life was uncertain. It provided for payments for me in the event of death and it provided for ultimate payments for me on my retirement when I reached the age of 65. I thought it was mutually advantageous and a kind of mutual insurance plan."

The conclusions reached by the Tax Court find ample support in the authorities, See Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, and are in harmony with the evidence as disclosed by the record.

Judgment affirmed.