OPINION. Raum, Judge: The petitioner contends that the transaction consummated on March 11, 1948, was in form and substance a sale of his partnership interest in the firm of Darmody, Todd & Co., that he realized a gain of $26,101.83 as a result of this sale, and that under the provisions of section 117 of the Internal Revenue Code of 1939, he is entitled to report this gain as a long-term capital gain. He argues that the partnership continued to do business as usual until March 11, 1948, and that he had an interest in each and every asset of the partnership and in its past and future profits; that he did not retire or withdraw from the partnership and was not bound by the terms of the agreement of November 13,1947; and that he sold his interest in the firm. We are unable to agree with the petitioner. The evidence convinces us that he did retire as a partner, and that the lump-sum consideration ($25,000) that he received was for all his interest as a retiring'partner “in the cash capital account [already fully recovered], profits,.un-billed work and uncollected accounts receivable.”[1] The amount was computed in such manner as not to include any consideration for an interest in the partnership as such, petitioner having already overdrawn his capital account. Indeed, petitioner executed certain documents on March 11,1948, to consummate the transaction, one of which recited that the $25,000 consideration was paid for petitioner’s interest “in and to the cash capital account, the profits, the uncollected accounts receivable and the unbilled work of the partnership * * There was no showing that the uncollected accounts receivable represented anything other than ordinary income flowing from personal services rendered by the partnership, and, since petitioner had already recovered his interest in the capital account, it is all too plain that the entire $25,000 represented ordinary income rather than capital gain to petitioner. This conclusion is reinforced by examining a second document executed by petitioner on March 11, 1948, in which he released all his right, title, and interest in the name, physical assets, and capital contribution of the partnership for a recited consideration of “One Dollar ($1.00) and other good and valuable consideration.” We are satisfied from the evidence that petitioner received no consideration in connection with the second document; that the only consideration actually received by him was in connection with the first document; and that such consideration represented items all of which constituted ordinary income. There was no convincing evidence that the firm in fact had goodwill of any consequence, apart from the goodwill of the individual partners, and we conclude that neither goodwill nor petitioner’s comparatively minor interest in the physical assets of the partnership played any part in determining the amount of the payment made to him. The parties did not appear to have attached any particular significance to petitioner’s interest in the partnership as such, and nothing was paid to him for such interest; the $25,000 was simply a lump-sum distribution of earnings. As a retiring partner he was entitled under the agreement entered into between him and the other members of the partnership on November 13, 1947, to his cash capital and profits computed on the cash basis to date of retirement, and to his proportionate interest in the accounts receivablé and unbilled work at the date of termination payable when and as collected. The negotiations between him, Dar-mody and Todd, and their attorneys, subsequent to February 9, 1948, were directed to determining his interest in the f oregoing items, which petitioner, as a retiring partner, was entitled to receive. Using figures taken from the books of the partnership petitioner made a computation which disclosed that his capital account was overdrawn and that he was entitled to receive $27,908.29 for his interest in profits computed on the cash basis and in unbilled work and uncollected accounts receivable. At his insistence Darmody and Todd agreed to deviate from the provisions of the November 13,1947, agreement to the extent of making a lump-sum payment, and he agreed to accept less than $27,908.29 because of the possibility that some of the accounts would prove to be uncollectible. The figure finally agreed upon was $25,000, but, as noted above, the agreement of March 5,1948, states merely that this amount was to be paid for all of the interest of petitioner “in the cash capital account, profits, unbilled work and uncollected accounts receivable of the partnership.” The transaction resulting in this payment did not differ in any material respect from that in Helvering v. Smith, 90 F. 2d 590 (C. A. 2). In that case the partnership articles of a law firm on the cash basis provided that a retiring partner would be entitled only to his proportionate share of the earnings of the firm actually collected and his share of earnings collected after retirement for services performed prior thereto. One of the members of the firm retired and the remaining partners agreed to pay him, in lieu of his interest in such earnings, the sum of $125,000. The Court of Appeals, speaking through Judge Learned Hand, held that the lump-sum payment was taxable as ordinary income, and, among other things, said (at p. 592) : The transaction was not a sale because be got nothing which was not his, and gave up nothing which was. Except for the “purchase” and release, all his collections would have been income; the remaining partners would merely have turned over to him his existing interest in earnings already made. As he kept his books on a cash basis, it is true that he would have been taxed only as he received the accounts in driblets, but he would have been taxed upon them as income. The “purchase” of that future income did not turn it into capital, any more than the discount of a note received in consideration of personal services. The commuted payment merely replaced the future income with cash. Indeed, this very situation was suggested in Bull v. United States, supra, 295 U. S. 247, at pages 256, 257, 55 S. Ct. 695, 698, 79 L. Ed. 1421, and dealt with as we say. Nobody would suggest that the sale of a declared dividend payable in the future turns the cash received into capital. It is of course possible to sell a partnership interest, computing the purchase price in such manner as to take into account future earnings of the firm; and the opinion in the Smith case itself recognized that such a sale might qualify as a capital transaction. 90 F. 2d at p. 592. But the essence of the Smith case was that the taxpayer was merely being paid for his interest in the firm’s earnings, and that is all that is really involved in the present case. There are some decisions, particularly in the Seventh Circuit, which place a different emphasis on the problem (Swiren v. Commissioner, 183 F. 2d 656 (C. A. 7); Meyer v. United States, 213 F. 2d 278 (C. A. 7); but cf. Whitworth v. Commissioner, 204 F. 2d 779 (C. A. 7); cf. also United States v. Shapiro, 178 F. 2d 459 (C. A. 8), and cases cited), but they are distinguishable on their facts. The court in the Swiren case stated (183 F. 2d at p. 660) that the Smith case “appears to have been overruled in McClellan v. Commissioner, 2 Cir., 117 F. 2d 988, and Williams v. McGowan, 2 Cir., 152 F. 2d 570 * * We do not so read those two decisions as overruling the Smith case, which was explicitly distinguished in both of them.[2] And since we regard the instant case as presenting substantially the same problem as was involved in the Smith case, we shall follow it here. Also in harmony with this disposition are the following: Richard S. Doyle, 37 B. T. A. 323, affirmed 102 F. 2d 86 (C. A. 4); Paul W. Trousdale, 16 T. C. 1056, affirmed 219 F. 2d 563 (C. A. 9); United States v. Snow, 223 F. 2d 103 (C. A. 9); Karsch v. Commissioner, 8 T. C. 1327; James Wesley McAfee, 9 T. C. 720; George F. Johnson, 21 T. C. 733.[3] In addition to the $25,000 which petitioner received for his interest in profits, unbilled work, and accounts receivable at the time of his retirement, he also received from the partnership between October 1, 1947, and March 11, 1948, the amount of $1,101.33, which represented cash withdrawals in excess of his cash capital balance at the beginning of the partnership fiscal year. Such excess was merely a distribution of partnership earnings. We hold that the respondent did not err in his determination that the total of these two amounts, $26,101.33, was taxable as ordinary income of the petitioner for the year ended December 31, 1948. Decision will be entered for the respondent. The agreement of March 5, 1948, also mentions accounts receivable of the predecessor partnership or John P. Darmody as an individual. However, if there were any such accounts receivable, they do not appear to play any Important part in this controversy. Moreover, the Court of Appeals for the Second Circuit subsequently cited the Smith case In Commissioner v. Whitney, 169 P. 2d 562, 567, footnote 5, certiorari denied 335 U. S. 892, without any suggestion that it had been overruled. It should be noted also that although it has been administratively recognized that a sale of a partnership interest is to be treated as a sale of a capital asset (G. C. M. 26379, 1950-1 C. B. 58), the ruling explicitly states that (p. 59) “payments made to a retiring partner which represent his distributive share of earnings for past services should be treated as ordinary income rather than the proceeds derived from a sale of his interest,” citing the Smith, Doyle, and MoAfee cases.