294 F.2d 863
 Chris J. SHERLOCK and Lenora Sherlock (Lenora Chapman Sherlock, Executrix under the Last Will and Testament of Chris J. Sherlock, substituted as party petitioner in the place and stead of Chris J. Sherlock, deceased), Petitioner,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent.
 No. 18680.
 United States Court of Appeals Fifth Circuit.
 September 27, 1961.
 Rehearing Denied October 30, 1961.
 
 William S. Pritchard, Winston B. McCall, Birmingham, Ala., Pritchard, McCall & Jones, Birmingham, Ala., of counsel for petitioner.
 Louise Foster, John M. Morawski, Attys., Dept. of Justice, Hart H. Spiegel, Chief Counsel, I. R. S., Washington, D. C., Lee A. Jackson, George F. Lynch, Harry Baum, John B. Jones, Jr., Attys., Louis F. Oberdorfer, Asst. Gen. Counsel, Dept. of Justice, Washington, D. C., for respondent.
 Before RIVES, JONES and BROWN, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 The Commissioner of Internal Revenue determined a deficiency in the income tax payable for the year 1954 by Chris J. Sherlock and Lenora Sherlock, his wife. The taxpayers contested the Commissioner's determination and the Tax Court resolved the issues against them. Sherlock v. Commissioner, 34 T.C. 522. The taxpayers petitioned this Court to review the Tax Court's decision. While the proceeding was pending before this Court, Chris J. Sherlock died and his wife, as his executrix, was substituted for him as a petitioner. Since only the income of Chris J. Sherlock is involved in the computation of the tax deficiency, he will be generally referred to as the taxpayer.
 
 
 2
 On June 1, 1951, the taxpayer entered into a partnership agreement with Moreland Griffith Smith and Richard J. Adams under the name of Sherlock, Smith and Adams. The firm rendered engineering and architectural services. The taxpayer was the engineeer, Smith and Adams were architects. The partnership agreement provided, among other things, that profits and losses should be borne equally by the partners, that any partner might withdraw upon giving notice and in such event the other partners could either discontinue the partnership business or buy the interest of the withdrawing partner. The partnership kept books on the basis of fiscal years ending April 30, and used the accrual method of accounting. On February 26, 1954, the taxpayer made a sale of his interest in the partnership to his partners, Smith and Adams, and on that day the parties entered into an agreement intended to express the terms of the sale. It fixed a price of $70,000 to be paid to the taxpayer for his interest of which $20,000 was payable in cash, and the balance was to be paid at the rate of $1,666.66 per month out of partnership earnings and assets. The agreement provided that:
 
 
 3
 "The books of the firm will be closed as of February 28, 1954, and seller withdraws as member of the firm and buyers will prepare, as soon as possible thereafter, returns of the income reflecting the profit and loss of the partnership for the period beginning June 1, 1953, and ending February 28, 1954. The profit between Chris J. Sherlock, Moreland Smith and Richard Adams; said returns shall be filed with the respective Governments and each of the parties will report their repective income from the partnership as shown by such returns. It is agreed that the profit and loss shown by such partnership to be the profit and loss of Sherlock has been received by him either through previous withdrawals or in the purchase price paid or to be paid by buyers."
 
 
 4
 The partnership filed an income tax return for the period commencing May 1, 1953, and ending February 28, 1954, reporting ordinary net income of the partnership in the amount of $249,827.38, with $83,275.79 distributable to the taxpayer. The taxpayer, in the joint return of his wife and himself reported the $70, 000 as long-term capital gain with a zero basis. None of his share of the partnership earnings for the May 1, 1953, to February 28, 1954, partnership period was returned by the taxpayer as ordinary income. The Commissioner determined that the distributive share of partnership earnings as reported in the partnership return in the amount of $83,275.79 was ordinary income of the taxpayer and computed a deficiency by including that amount as taxable ordinary income and reducing the amount of the capital gain. At the trial before the Tax Court it was stipulated that the ordinary income of the partnership for the May 1, 1953, to February 28, 1954, fiscal year was $147,827.38, of which the taxpayer's share was $49,827.38, that at the time the taxpayer sold his partnership interest he was overdrawn resulting in capital deficit of $9,641.59, and that his withdrawals during the year amounted to $14,233.97. The Tax Court made a re-determination of the tax using the amount of $49,827.38 as the taxpayer's share of partnership earnings instead of the figure of $83,275.79 used by the Commissioner, with such adjustments in the computations as that change made necessary. The Tax Court sustained the Commissioner's additions to the tax, with appropriate adjustments, under Sections 294(d) (1) (B) and 294 (d) (2) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 294(d) (1) (B), (2), for failure to make timely payments of installments of estimated tax and for substantial underestimate of estimated tax.
 
 
 5
 It is contended on behalf of the taxpayer that subsequent to the sale of his interest on February 26, 1954, but on or as of February 28, 1954, or prior thereto, accounts receivable were accrued on the partnership books in the amount of $194.904.04 without the knowledge of the taxpayer, and had he known there were accruals of that amount he would have bought instead of selling. It is here urged that these uncollected accruals should not be included in the partnership earnings and hence should not be reckoned, to any extent, in the determination of the income tax of Sherlock. Since the amount of the ordinary income of the partnership has been stipulated this contention need not be considered so far as the partnership is concerned. Whether it should be used in determining the taxable income of the taxpayer, and if so, how it should be used are the questions before us.
 
 
 6
 The primary question for our decision is whether, upon the sale for a lump sum by the taxpayer of his partnership interest to his former partners prior to the end of the partnership's fiscal year, the amount of the taxpayer's share of undistributed earnings which accrued during the period are taxable to him as ordinary income. The Tax Court determined that his ratable share of such accruals was taxable to him as ordinary income.
 
 
 7
 The Internal Revenue Service followed the practice, prior to 1950, of treating the sale of a partnership interest as a sale of the selling partner's undivided interest in each specific partnership asset. Whether gains or losses were treated as ordinary income or as capital gains depended, under this theory, sometimes referred to as the aggregate concept, upon the character of each specific item of the partnership's property at the time of the sale. A majority of the court, including this Court[1] adopted the so-called entity concept[2] under which the interest of a partner was regarded as an interest held in common with his co-partners in the whole of the partnership assets without any separate rights in the specific items of which the whole is composed. Commissioner of Internal Revenue v. Smith, supra. The Internal Revenue Service reconciled itself to the entity theory and changed to the view that the sale of the partnership interest should be treated as a sale of a capital asset, except that payments of a distributive share of earnings for past services should be treated as ordinary income. G.C.M. 26379, C.B.1950-1 p. 58.
 
 
 8
 The position of the Internal Revenue Service has been sustained by the Second,[3] Third,[4] Fourth[5] and Ninth[6] Circuits, as well as by the Tax Court.[7] Three Circuits, the Sixth,[8] Seventh[9] and Eighth[10] have adopted a contrary view. It has been suggested, however, that in its latest decision[11] the Seventh Circuit has departed from its holdings in the Meyer and Swiren cases and aligned itself with the majority. 6 Mertens, Law of Federal Income Taxation, 168, § 35.55. In the enactment of the 1954 Code it was recognized by Congress that "It is not clear whether the sale of an interest whose value is attributable to uncollected rights to income gives rise to capital gain or ordinary income" H.R.Rep. No. 1337, 3 U.S.Code Cong. and Adm. News 1954, p. 4096. And "Because of the confusion in this area, basic rules have been set forth in order to clarify tax treatment and at the same time to prevent the use of the sale of an interest in a partnership as a device for converting rights to income into capital gain", Id. The rule for which the Internal Revenue Service here contends was adopted in the Internal Revenue Code of 1954. 26 U.S.C.A. (I.R.C.1954) §§ 741, 751.
 
 
 9
 Although the taxpayer is most vigorous in contending otherwise we think this Court has identified itself with the majority in Le Sage v. Commissioner, 5 Cir., 1949, 173 F.2d 826. There it was held that the share of earnings of the selling partner between January 1, 1943, the date of the balance sheet fixing the partners' capital investments, and November 15, the date as of which the sale of the partnership interest was made, was taxable as ordinary income to the seller. In the opinion it is said:
 
 
 10
 "The Tax Court held that a part of the difference between cost and sale price represented petitioner's distributive share of profits between January 1 and November 15, 1943, and was taxable as ordinary income, and that only the balance remaining after the income figure was deducted was capital gain. Both the evidence and the law lend support to this holding." 173 F.2d 826, 827.
 
 
 11
 It seems likely, although it is not too clear from the opinion, that the undistributed earnings in Le Sage had been realized. This is not true with respect to the partnership of which the taxpayer, Sherlock, was a member. But the Sherlock partnership used the accrual method of accounting so the same rule would be applicable. The question is not before us as to whether the same rule would apply with respect to unrealized income of a cash basis partnership. The Le Sage case was decided in the month following the Long and Smith cases, supra. The same panel of the Court heard all three cases. In Long and Smith the entity approach is followed and the general rule adopted that the sale of a partnership interest is the sale of a capital asset entitled to capital gains treatment in determining Federal income tax liability. Le Sage recognizes and applies the corollary rule that the seller's share of undistributed and untaxed profits are taxable to him as ordinary income.
 
 
 12
 If we were persuaded that Le Sage was not a precedent by which we are bound, and if we did not feel that we should follow those decisions of other courts which we regard as representing the weight of authority, we should nevertheless reach the conclusion that fundamental principles required the reaching of the same result as that of the Tax Court. The purpose of the capital gains provisions of the Income Tax law is to relieve a taxpayer of excessive tax burdens on gains resulting from a conversion of capital investments. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L. Ed. 199. One who makes a present transfer of a right to receive income at a future date has realized taxable ordinary income by the transaction. Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 78 S. Ct. 691, 2 L.Ed.2d 743; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Horst, 311 U.S. U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75. The right to receive a share of ordinary income earned by a partnership does not become a capital asset upon its sale even though the sale is of a partnership interest. Tunnell v. United States, supra; United States v. Snow, supra. We are in agreement with the Tax Court in holding that the taxpayer's realization for the sale of the partnership earnings was ordinary income to him.
 
 
 13
 The contention is made that no part or share of accrued accounts which were not charged until after the making of the sale should be included in determining the taxpayer's income. The point is urged that under the partnership practices the accruals could not have been made on the books without his agreeing thereto and he did not agree. We again observe that the agreement for the sale of his interest contained a provision that the buyers would prepare returns of the income reflecting profit and loss up to February 28, 1954. Since it was his partners who were to make these determinations, it cannot be said that his agreement or acquiescence was required. It is said that the sale occurred on February 26, 1954, and that accruals after that date should not be used in ascertaining the taxpayer's income. The agreement provides that the income should be computed for the period ending February 28, 1954. It cannot be said that entries and computations to be "as of February 28, 1954" must have been made on or before that date. But these questions need not detain us. The parties have stipulated as to the ordinary net income of the partnership for the period ending February 28, 1954. The stipulation disposes of all questions as to the accrual of income so far as it is germane to the issues before us.
 
 
 14
 Since the questions of tax liability are resolved against the taxpayer, it follows that the additions for underestimating the tax were properly imposed. The petitioner does not contend otherwise.
 
 
 15
 The decision of the Tax Court should be and is
 
 
 16
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Commissioner of Internal Revenue v. Smith, 5 Cir., 1949, 173 F.2d 470, certiorari denied 338 U.S. 818, 70 S.Ct. 61, 94 L.Ed. 496; Long v. Commissioner, 5 Cir., 1949, 173 F.2d 471, certiorari denied 338 U.S. 819, 70 S.Ct. 61, 94 L.Ed. 496
 
 
 [2]
 For discussions of the aggregate and entity concepts, so called, see Surrey and Warren, The Income Tax Project of the American Law Institute, 66 Harv.L.Rev. 1161, 1171; Anderson and Coffee, Proposed Revision of Partner and Partnership Taxation, 15 Tax L.Rev. 497
 
 
 [3]
 Leff v. Commissioner, 2 Cir., 1956, 235 F.2d 439; Helvering v. Smith, 2 Cir., 1937, 90 F.2d 590
 
 
 [4]
 Tunnell v. United States, 3 Cir., 1958, 259 F.2d 916
 
 
 [5]
 Doyle v. Commissioner, 4 Cir., 1939, 102 F.2d 86
 
 
 [6]
 United States v. Snow, 9 Cir., 1955, 223 F.2d 103, certiorari denied 350 U.S. 831, 76 S.Ct. 64, 100 L.Ed. 741; Trousdale v. Commissioner, 9 Cir., 1955, 219 F.2d 563
 
 
 [7]
 Estate of William Goldstein v. Commissioner, 29 T.C. 931; Spicker v. Commissioner, 26 T.C. 91; Johnson v. Commissioner, 21 T.C. 733
 
 
 [8]
 Berry v. United States, 6 Cir., 1959, 267 F.2d 298
 
 
 [9]
 Meyer v. United States, 7 Cir., 1954, 213 F.2d 278; Swiren v. Commissioner, 7 Cir., 1950, 183 F.2d 656, certiorari denied 340 U.S. 912, 71 S.Ct. 293, 95 L. Ed. 659
 
 
 [10]
 United States v. Donoho, 8 Cir., 1960, 275 F.2d 489; United States v. Shapiro, 8 Cir., 1949, 178 F.2d 459
 
 
 [11]
 Hulbert v. Commissioner, 7 Cir., 1955, 227 F.2d 399
 
 
 
 17
 JOHN R. BROWN, Circuit Judge (dissenting).
 
 
 18
 I do not understand how the entity concept, firmly and long since adopted by this Court,[12] can coexist with the hybrid contention that while the interest sold is an indivisible part of the whole entity, this does not include as a part of that entity that which, absent a sale of all, would have been taxable as ordinary income.
 
 
 19
 I recognize, of course, that courts continue to see a distinction but what they are in fact applying is but a sugar-coated version of the now-rejected aggregate theory that the microscope must be put on each and every asset, right or claim being effectually transferred in order to determine what would have been payable had the entire sale not been made.[13]
 
 
 20
 While I suppose we ought to know better than anyone else what we wrote and, more important, what we meant in Le Sage v. Commissioner, 5 Cir., 1949, 173 F.2d 826, the system of written court opinions gives us no more right, no more prescience, than the most remote competent reader, Judge or lawyer. Aetna Life Insurance Company v. Texas Gulf Sulphur Company, 5 Cir., 1956, 235 F.2d 791. As a circumstance which I regard of great significance the 8th Circuit has by express citation and reference[14] to our Smith and Long cases (note 1, supra) aligned us with the 6th, 7th and 8th Circuits in treating the sale as a capital gain. What the left hand in Smith and Long twice gave in March 1949, surely the right hand did not intend to take away ostensibly a month later in Le Sage.
 
 
 21
 But the Court does not finally put it on Le Sage. Nor would I. The transaction is a sale of an entire interest. It is the sale which is the decisive factor. What is sold is not merely the right to receive income theretofore earned and thereafter to be realized from past operations. It comprehends everything. The everything happens to include as an indivisible part what has been, or will shortly be, earned from prior operations. The sale of all is the thing. Devoted as we are to the proposition that the sauce is for goose or gander alike with a strict neutrality whether it helps or hinders government or taxpayer, Weinert v. Commissioner, 5 Cir., 1961, 294 F.2d 750 this determines the tax consequence of that transaction. It is not determined by what might have been but never was. General Gas Corporation v. Commissioner, 5 Cir., 1961, 293 F.2d 35.
 
 I therefore
 
 22
 Dissent.
 
 
 
 Notes:
 
 
 [12]
 See note 1, supra
 
 
 [13]
 Chopping up the "entity" cannot be justified on the basis that for the item to be a genuine capital asset subject to capital gains it must have been derived from partnership earnings on which the partners returned and paid an income tax. For example partnershipABC in the early part of the tax year earns $30,000 and invests it all immediately in a building. Partner B has fortuitous non-partnership deductions, etc., so no tax is due by him for that year. In the event of an outright sale of his partnership interest is his "portion" of the building ordinary income while the interests of partners A and C are capital assets, or vice versa?
 
 
 [14]
 See note 10, supra