## PARTICELLI

v.

## COMMISSIONER OF INTERNAL REVENUE.

## PARTICELLI'S ESTATE et al.

v.

## COMMISSIONER OF INTERNAL REVENUE.

No. 13503.

United States Court of Appeals, Ninth Circuit.

May 5, 1954.

Valentine Brookes, Arthur H. Kent, San Francisco, Cal., for petitioners.

H. Brian Holland, Asst. Atty. Gen., Robert B. Ross, Ellis N. Slack, S. Dee Hanson, Sp. Assts. to Atty. Gen., Charles W. Davis, chief counsel, Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HEALY, ORR and LEMMON, Circuit Judges.

ORR, Circuit Judge.

Petitioner Giulio Particelli,[1] having been engaged in the business of operating a winery in the state of California for some years, decided to dispose of the winery business. Prior to making the decision to sell, petitioner had been ap-

---

1. The estate of Eletta Particelli, Deceased, and Arthur Guerrazzi, Executor, are also petitioners, but, as a matter of conven-
ience, we refer only to petitioner Giulio Particelli.

proached by a buyer of wine, one John Dumbra, a representative of Tiara Products Company, Inc., hereafter Tiara, who made an offer to buy three or four cars of wine. Because of the then existing O.P.A. price ceilings no profit could be realized from the sale of the wine. Petitioner made a counter offer to sell the wine and winery for the sum of $350,-000.[2] While Tiara had no particular desire to own or operate the winery, the demand for wine was so great and the ceiling price under which Tiara operated was such that it could afford to buy the winery in order to obtain the wine. After further negotiation the purchase price of $350,000 was agreed upon. A written contract of sale was executed wherein the sale price of the wine was fixed at $77,000 and the winery at $273,-000. The subsequent escrow instructions treated the transfer of the wine and the winery as two separate sales at the prices stated in the written contract. Both buyer and seller recorded the transaction in their books in accordance with the terms of the written contract and Tiara used these cost figures in its 1943 and 1944 federal income tax returns. Petitioner and his wife treated the transaction in their 1943 federal income tax return as a sale of wine for $77,000 resulting in ordinary income of that amount, and a sale of the winery for $273,000, producing a capital gain of $217,634.

The Commissioner of Internal Revenue assessed a deficiency of $124,445.70 against petitioner and his wife. He took the position that the real transaction was a sale of two classes of property for a lump sum price and the allocation in the written contract of the purchase price to the wine and winery was merely a subterfuge. He reallocated $302,500 of the purchase price to the wine and $47,500 to the winery. The Tax Court sustained the Commissioner's determination that the real transaction was a sale of the wine and winery for one price but reallocated the proceeds of the sale to $275,000 for the wine and $75,000 for the winery.

■ Petitioner is insisting that parties should not be disturbed in their right and privilege to contract as they see fit and that the terms and conditions of their contracts, as evidenced in writing, is binding for all purposes. This contention would be valid if confined to rights of the contracting parties as between themselves but is not controlling in an income tax determination. The Supreme Court of the United States has so held. In Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 708, 89 L.Ed. 981, the Supreme Court said:

"The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant."

■ It is recognized that a taxpayer is free to employ any legal means in the conduct of his business affairs to avoid or minimize taxes, but the means employed must not be mere subterfuge or sham. Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670; Nordling v. Commissioner, 9 Cir., 1948, 166 F.2d 703, certiorari denied 335 U.S. 817, 69 S.Ct. 38, 93 L.Ed. 372.

■■ The determination of whether the written contract reflected the real agreement between the parties was a question of fact and the Tax Court's

---

**2.** Prior to 1942 about 80% of all wine produced in California was sold in bulk. The cost of grapes in 1943 prevented wine producers from selling unfinished wines at bulk ceiling prices and it became a common practice for the producer to sell his inventory of wine and winery in a package deal for a lump sum price. Producers could thus legally dispose of their wine at prices above the O.P.A. ceilings.

finding with respect thereto is final if based upon substantial evidence. Commissioner of Internal Revenue v. Tower, 1946, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670.[3] We find substantial evidence in this case to support the Tax Court's conclusion that the substance of the transaction was a sale of the wine and winery for a total price of $350,000 without any bona fide agreement as to the real sales price of each piece of property involved.

The negotiations preceding the written contract disclose an intention to sell two pieces of property for a lump sum price. Petitioner expressly rejected Tiara's first offer to buy four carloads of wine. He refused to make an independent sale of wine because it cost him fifty cents a gallon to make and the ceiling price was twenty-eight cents a gallon. The free market price for the wine was slightly more than a dollar a gallon.[4] Petitioner insisted on selling the winery and the inventory of wine together. Good business judgment would not permit a sale of the wine for the stated contract price of $77,000 with its resultant financial loss, and the compelling inference to be drawn from all the facts is that petitioner did not ignore his own best interests in this transaction. We think there can be no reasonable dispute that Tiara would not and did not pay $273,000 for the winery, the price stated in the contract. At the time of the negotiations Tiara estimated that the winery itself was not worth more than $60,000 and considered that it was paying $1 to $1.12 per gallon for the wine. In fact, Tiara sold the winery a year later for $20,000.[5]

Tiara informed petitioner that it did not care how he allocated the purchase price so long as the total price did not exceed the agreed $350,000. Petitioner had been advised by his accountant that the sale of his winery would result in a capital gains tax whereas the wine would be subject to ordinary income tax. The tax consequence of assigning a high valuation to the winery and a low valuation to the wine inventory was undoubtedly understood by petitioner. He therefore drew up the contract specifying separate prices for the wine and winery to suit his own convenience. The price allocated to the wine in the contract certainly did not represent the true value or the value contemplated by both parties and bears no resemblance to the realities of the transaction. The total purchase price was arrived at through arms length negotiation but the allocation of the selling price to the two pieces of property involved was not. Once the parties had agreed upon the purchase price it was a matter of indifference to the buyer as to how the seller allocated it. The argument that the valuation placed on the wine and the winery was of vital importance to Tiara because it necessarily affected its income tax position has no merit. That argument wholly ignores the crucial fact that the federal income tax is a graduated tax and a given transaction may have different consequences depending upon the circumstances of the particular taxpayer.[6]

Petitioner sought to explain the ridiculously low price attributed to the

---

3. In a recent decision involving an identical issue, the Tenth Circuit accepted the Tax Court's ultimate finding of fact that the written contract allocating the proceeds from the sale of stock in part to the stock and in part to an agreement not to compete represented the substance and reality of the transaction. Hamlin's Trust v. Commissioner, 10 Cir., 1954, 209 F.2d 761.

4. During 1943 three methods were available to winery operators to legally dis-

pose of their unfinished wines without subjecting the sale to O.P.A. ceilings.

5. The most that Tiara could have obtained for the winery was $45,000 had it sold before the market broke.

6. It is suggested that any high profits realized by Tiara from the sale of the undervalued wine would be offset by high depreciation deductions based on the overvaluation of the winery or by any loss sustained from the resale of the winery. See §§ 117(d) (1), 117(e) and 23(*l*), Internal Revenue Code, 26 U.S.C.A.

wine in the contract on the ground that he thought the twenty-eight cents a gallon ceiling price applied to the sale and he did not want to violate the law.[7] The Tax Court refused to credit petitioner's testimony on this point and gave weight to the testimony of witness Alberigi to the effect that petitioner told him that he, petitioner, had sold his wine at $1 a gallon and had also sold the winery in order to make it legal under the O.P.A. regulations.

The fact that Tiara charged petitioner $1,000 for 1,000 gallons of wine withdrawn by him before the sale was closed is strong evidence that the parties really intended and understood that the selling price of the wine was approximately $1 a gallon rather than the nominal price contained in the contract. Petitioner attempted to show that he was not charged $1 per gallon for the wine he retained and, among other explanations, stated that the wine retained was of higher quality than that sold to Tiara. His evidence on this point was so contradictory that the Tax Court properly rejected it. Having concluded that the contract prices for the wine and winery did not constitute the real agreement of the parties, the Tax Court determined that the wine was actually bought and sold for $1 a gallon and allocated the balance of the purchase price to the winery. Petitioner claims that it was error for the Tax Court to assign a price to the wine in excess of the O.P.A. ceiling. His argument seems to be that had the Government seized the wine under its power of condemnation it would have had to pay only twenty-eight cents a gallon, the fair market value of the wine determined by the ceiling price. Thus, petitioner says that the Government cannot place a value on the wine higher than the ceiling price because the same rule for determining the Government's liabilities in condemnation cases should be applied in determining its rights in tax cases.

The answer to this contention is that there was no ceiling price applicable to the sale here involved because the wine was a part of the sale of a going business. We find no merit in the contention that the sale was not exempt from the O.P.A. ceiling price because petitioner retained his bottling plant and retail store. The bottling and selling of wines is an entirely distinct and separate business from that of producing wine. The sale of the winery and all its equipment constituted the sale of petitioner's entire business as a wine producer.

Petitioner complains that the Tax Court improperly admitted into evidence Government's Exhibit W, and testimony relating thereto. This exhibit contained information that petitioner had, previous to the sale involved in this case, sold 60,000 gallons of wine above O.P.A. ceiling prices. The objection is that the evidence tended to show the commission of a separate and distinct crime of which petitioner had not been convicted. The trial was before the Court sitting without a jury and the usual method of disposing of objections to the admissibility of evidence in such cases is to invoke the presumption that the trial court considered only competent evidence. Sinclair v. United States, 1929, 279 U.S. 749, 49 S.Ct. 471, 73 L.Ed. 938; Thompson v. Baltimore & O. R. Co., 8 Cir., 1946, 155 F.2d 767, certiorari denied 329 U.S. 762, 67 S.Ct. 122, 91 L.Ed. 657. Petitioner argues, however, that the presumption is nullified in this case because the Court made a finding based on the alleged incompetent evidence. While such a finding does appear it is clear that the Court did not act on it. The Court makes no mention of the challenged evidence in its opinion. It does mention testimony admitted without objection, and to the admission of which no complaint is made on this appeal, of a sale where petitioner was said to have sold 100,000 gallons of wine at an over-

---

7. The O.P.A. ceiling price did not apply to the sale of wine when sold as a part of a going business.

ceiling price. The admission of the evidence relative to the sale of the 60,000 gallons at an over-ceiling price resulted in no prejudice to appellant.

Judgment affirmed.