Paul W. TROUSDALE, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

Marguerite R. TROUSDALE,
Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.
No. 13108.

United States Court of Appeals,
Ninth Circuit.

Feb. 4, 1955.

Lloyd H. Rainey, J. Everett Blum, Beverly Hills, Cal., for petitioners.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, S. Dee Hanson, Sp. Assts. to Atty. Gen., George Lynch, Attorney, Department of Justice, Charles W. Davis, Chief Counsel, I.R.S., Washington, D. C., for respondent.

Before STEPHENS, ORR and POPE, Circuit Judges.

POPE, Circuit Judge.

Petitioners are husband and wife, residents of California, who filed their income tax returns for the calendar year 1945 on a community property basis. The controversy present here arises out of the claim of Paul W. Trousdale, here called the petitioner, that a sum of $112,-000, realized by him from a purported "assignment" of his interest in a partnership, represented income from the sale of a capital asset. These income tax returns reported the gain mentioned as one from the sale of a capital asset held for a period of more than six months. The respondent Commissioner determined that this gain was taxable as ordinary income. The Tax Court upheld this determination which resulted in a finding of a deficiency in respect to each taxpayer.

About August 1, 1943, the petitioner and one Dehn formed a partnership which they called Housing Construction Company for the stated purpose of "carrying on and conducting a residential construction contracting business in

Southern California." Actually the only business which the partnership did was to supervise the construction of defense housing projects for which the partners were paid on a per housing unit fee basis. They entered into separate agreements with various corporations which were constructing defense housing projects, three of which were the Fourth Defense Housing Co., the Fifth Defense Housing Co., and the Overland Housing Co. Both the petitioner and Dehn had interests as stockholders in these and other corporations with which the partnership had contracts and the petitioner was also vice president of Overland Housing Co. The partnership had no employees and no tangible assets. Although each of the partners contributed $500 to the partnership to create a proprietary interest of $1000 in cash, the partnership income was derived solely from the personal services of the members of the firm. Thus the contract with Overland Housing Co. provided that the partnership was to receive a total of $224,000 ($350 per house for 640 houses), for services "in connection with the procurement of building sites, priorities, loan commitments, construction bonds and loans and the actual construction of said 640 residences and garage slabs." Petitioner had previous experience as a building contractor and Dehn had been engaged in real estate development and investments.

Before March 23, 1945, the two partners became desirous of terminating their business relationship. Petitioner offered to sell his interest to Dehn. In February, 1945, they went to an attorney and informed him that they were terminating their business association and asked advice with respect to the tax consequences of a sale by Trousdale to Dehn. The attorney informed them that in his view an interest in a partnership was a capital asset; that if any sales were contemplated only one partner should sell his interest and the sale should be made to a third party.

By March 23, 1945, the enterprises previously undertaken by the partnership had largely come to an end. All services to be performed by the partnership under its contracts with Fourth Defense Housing Co. and Fifth Defense Housing Co. had been completed, although those companies still owed the partnership $50,000. The contract with Overland Housing Co., under which the partnership was to be paid the $224,000 mentioned above, was nearing completion. Overland had substantially completed its construction program. All but 28 of the 640 houses were finished by May 25, 1945, and the 28 houses were finished in July, 1945. By March 23, 1945, 87.2 percent of the sum committed through a bank loan had been disbursed upon this project. Thus the Tax Court was warranted in finding that on the date mentioned but few supervisory services remained to be performed by the partnership under this contract. There were no other unfinished commitments.[1]

After Dehn and petitioner received the attorney's advice that a sale should be made to a third party, Dehn rejected the petitioner's offer to sell him his interest in the partnership. One William A. Godshall, who was president of Overland, then interested Elizabeth Bonner, Eleanor K. Ince and William T. Ince in becoming assignees under the assignment hereafter mentioned. Elizabeth Bonner was Godshall's daughter, and Eleanor K. Ince was the widow and William T. Ince the son of Thomas H. Ince, deceased, of whose estate Godshall was trustee. None of these persons had any experience in the construction business or in any cognate business, and none had had any experience in business affairs generally. Neither of the women had ever met Trousdale or Dehn; at the time of the trial Mrs. Ince had not yet met Dehn; yet by an instrument dated March 23, 1945, called an "assignment", petitioner recited that he did thereby "sell, transfer, assign and set over" unto the three

[1]. Two other contracts, mentioned in note 2, infra, were turned over to Dehn by assignment the day previous to March 23, 1945.

persons named, as assignees, his undivided interest in the partnership. The assignment listed as the assets of the partnership the $1000 cash previously mentioned, the $50,000 in accounts receivable from the Fourth and Fifth Defense Housing companies, and the sums payable under the contract with Overland Housing Company, that is to say, $350 a residence for 640 residences.

At this time Overland had paid nothing on its contract and hence the total accounts receivable listed amounted to $274,000. As consideration for this assignment the assignees paid petitioner $35,500 in cash and gave their demand promissory note for the sum of $77,000 bearing interest at 4% per annum. Thus the cash paid and the note aggregated $112,500, which represented a discount of $25,000 under the face value of the petitioner's half interest in the accounts receivable of $274,000 and capital of $1000.[2]

On March 24, 1945, the day following the assignment, Dehn and the three assignees executed articles of copartnership which recited that they were to carry on business under the name of "Housing Construction Company", the name used by the old partnership. This so-called new partnership undertook no additional projects and made no new contracts.[3] The few supervisory services remaining to be performed in connection with the Overland Housing project were rendered by Godshall, president of that company, and by one Vincent who was superintendent of construction. The petitioner, who, it will be recalled, was vice-president of that company, also performed some services in the way of examining the project and some of its payment orders.

For a time after the assignment when payments were made to Housing Construction Company by the debtors on the assigned accounts, checks of Housing Construction Company were issued, one to the petitioner for half the amount thus received, and one for the other half to Dehn. This continued to July 6, 1945, by which time Trousdale had received remittances in that manner to the extent of $50,000. The checks during that time were being written and the Housing Construction Company account handled by Godshall. After the date last mentioned, on the suggestion of Godshall, moneys then received were distributed one-half to Dehn and the other half to the three assignees, who, in turn issued their own checks to Trousdale for application upon the $77,000 note. The note was finally satisfied on July 25, 1946. On May 31, 1946, Dehn disposed of his rights in the Housing Construction Company to one Burrell and the concern was dissolved on November 20, 1946.

It is thus apparent that from the date of the so-called assignment to the date of the final formal liquidation of the Housing Construction Company the only thing done or performed by the latter organization was to collect the balance of the assigned accounts, and the only thing that Elizabeth Bonner, Eleanor K. Ince and William T. Ince ever did was to collect their share of these moneys and to write their checks as above stated to pay off the note to the petitioner.

The Tax Court held that under the circumstances here outlined, the partnership between petitioner and Dehn was on March 23, 1945, "in a state of liquidation"; that neither Dehn nor the three assignees who purported to set up the new Housing Construction Company anticipated that any further activities would be carried on by that company as a going concern; that the so-called articles of copartnership dated March 24,

---

2. The partnership had some contracts with Willowbrook Development Co. and Avalon Housing Co., out of which some claims or demands had arisen against those two concerns, but by a written agreement dated March 22, 1945, one day prior to the assignment, the partnership transferred all of its claims and demands against those companies to Dehn.

3. Both of the women testified that none of the three assignees ever contemplated taking any active part in the business affairs of Housing Construction Company.

1945, between those four persons were "without substance and in no way represented the real intentions of the parties". It held that the assignment of March 23, 1945, "was not a bona fide sale of a genuine partnership interest but was a device motivated * * * only by tax considerations for the purpose of assigning to others than the person who had earned them ordinary income distributions on liquidation of a personal service partnership"; and that the deficiency determination by the Commissioner was a correct one.

The petitions for review in this court are based on petitioners' assertion that it is the established rule that for income tax purposes the sale of a partnership interest in a going concern should be treated as a sale of a capital asset and if such interest had been held for a period of more than six months the gain realized from the sale thereof was taxable under the provisions of § 117(b) of the Internal Revenue Code 26 U.S.C.A. § 117 (b), as then in effect, providing for recognition of but 50 per cent of the gain. It is asserted that such rule must be applied in this case.

In approaching this problem, we begin with the case of Hatch's Estate v. Commissioner, 9 Cir., 198 F.2d 26, 29, in which this court had occasion to discuss the history and development of the general rule which there was stated to be that "for income tax purposes the sale of a partnership interest in a going concern should be treated as a sale of a capital asset." Other decisions in support of that rule were there cited. Reference was made there to the 1950 action of the Commissioner, in G.C.M. 26379, in acquiescing to these decisions; and the court quoted therefrom the qualifications which the Commissioner attached as follows: "The Commissioner qualified his acquiescence to the treatment of a partnership interest as a capital asset with the proviso: 'The application of this rule should, of course, be limited to those cases in which the transaction in substance and effect, as distinquished from form and appearance, is essentially the sale of a partnership interest. See Estate of Herbert B. Hatch, v. Commissioner, 14 T.C. 251.'" Reference to that memorandum discloses that immediately after the portion there quoted the following appears: "For example, payments made to a retiring partner which represent his distributive share of earnings for past services should be treated as ordinary income rather than the proceeds derived from the sale of his interest. See Helvering v. Smith [2 Cir.], 90 F.2d 590; Ct.D. 1297, C.B.1938-1, 277; Doyle v. Commissioner [4 Cir.], 102 F. 2d 86 * * *."

It is obvious that in the view of the Tax Court the facts of this case brought it within the proviso thus stated in the General Counsel's Memorandum. Petitioner vigorously attacks this view, asserting that the facts do not warrant either a determination that the partnership was in a state of liquidation or that the assignment or sale of the partnership interest lacked reality for tax purposes.

Of course the Tax Court is vested with the primary function of determining the facts and drawing appropriate inferences from the evidence before it and this court may not disturb findings that are not clearly erroneous.

There are many facts and circumstances here which point in the direction of the Tax Court's findings. The stipulation of the parties shows that in February, 1945, petitioner and Dehn told their attorney "that they were terminating their business association". It recites that petitioner and Dehn "became desirous of terminating their business relationships". We have referred to the suggestion of counsel that assignment be made to some third party. The third parties selected to accept the assignment were the three relatives or associates of Godshall who had no experience or training in business or in the building construction field, who regarded their connection with the matter as just an investment, who did not at the time know either petitioner or Dehn, and who testified that they had no expectation whatever of taking any active part in the

business affairs of Housing Construction Company. In fact, Mrs. Bonner was not in California at the time the assignment was arranged, and she had no recollection at the trial of ever having had any business discussions in connection with it. As could well be expected under these circumstances, the purported partnership set up on March 24, 1945, did no more business in the housing field and did nothing whatever except to collect the old accounts and to make appropriate distributions to the persons entitled to receive the funds, including the petitioner. In this respect it did substantially what a liquidating agent for a dissolved partnership might have done, and nothing more.

It is true that the final services in supervision of construction work for Overland Housing Co. had not been performed at the date of the assignment on March 23, 1945. The Tax Court found that the actual construction of the 640 residences had been substantially completed and few supervisory services remained to be performed. This we think is in accord with the stipulated record.

█ We hold that the facts sustain the ultimate findings of the Tax Court. In short, we think that the Tax Court could properly find, as it did, that this was a case in which the transaction was not in substance and effect the sale of a partnership interest, but that the payments made to the petitioner were merely payments made to a retiring partner which represented his distributive share of earnings for past services.

Petitioner relies upon the case of Swiren v. Commissioner, 7 Cir., 183 F. 2d 656, which treated the sale by a partner of his interest in a law firm as a sale of a capital asset, notwithstanding the assets included earned fees.[4] We find no occasion to express any view with respect to the soundness of that decision,[5] for it is clearly distinguishable from this one. Swiren's law firm was not in a process of liquidation; and the purchaser of his interest with the other partners continued the partnership venture thereafter.

Petitioner further asserts that under California law a partnership continues until the winding up of partnership affairs is completed, Cal.Corp.Code, § 15030, and that in California the lack of business experience and qualifications on the part of the three assignees would in no manner lessen their capacity to be partners or prevent the continued existence of a partnership. Petitioner alludes to their testimony that they intended to and did rely upon Godshall to do for them whatever was necessary in connection with the firm business.

4. In that case Swiren had a 30 percent interest in a law firm which had total assets valued at approximately $145,621. Swiren's interest amounted to $43,686.30. Approximately 80 percent of the partnership assets was represented by earned fees of the partnership. Swiren sold his partnership interest to one of the other partners for $40,000. The court held the Commissioner had improperly attempted to segregate and tax as ordinary income that portion of what Swiren received which represented fees and accounts receivable. It ruled that notwithstanding the fact that the partnership assets included items which in due course would yield gross income to the partnership, yet the partnership interest must be treated as a whole without regard to the nature of the underlying assets and it held this interest to be a capital asset. It therefore reversed the Tax Court for failing to recognize that as a matter of law Swiren's partnership interest as a whole was a capital asset within § 117.

5. One judge dissented in that case. Subsequently in Meyer v. United States, 7 Cir., 213 F.2d 278, the Government suggested to the court that the decision in Watson v. Commissioner, 345 U.S. 544, 73 S.Ct. 848, 97 L.Ed. 1232, which was subsequent to the Swiren decision, announced a principle which was at variance with that followed in Swiren. We feel much less sure than did the court in the Meyer case that it was able to distinguish the Watson case. A holding that on a sale of an orange grove for a lump sum, the Commissioner may segregate and charge as ordinary income so much of the price paid as is found to be the value fairly attributable to the presence of an unmatured crop at the time of sale, might well suggest doubts about the soundness of the decision in the Swiren case.

But the principles and concepts which the courts must apply in the application of the federal income tax law are not governed by State criteria. United States v. Kintner, 9 Cir., 216 F.2d 418, 424; Commissioner of Internal Revenue v. Linde, 9 Cir., 213 F.2d 1, 7. The question here is whether there was in truth and in reality the sale of a capital asset within the meaning of the federal tax laws.

What the Tax Court has held is, in short, that there was really a dissolution of a partnership under the guise of a sale. In the Hatch case, supra, this court, while holding the proviso contained in the General Counsel's Memorandum, above referred to, not applicable to the facts in that case, nevertheless stated that "we agree with the statement of the Commissioner". That proviso and the holding of the Tax Court here, are but an application of the principle that the incidence of taxation depends upon the substance and not the form of a transaction. Thus in the determination of whether a partnership exists for tax purposes, the question is whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 742, 69 S.Ct. 1210, 1214, 93 L.Ed. 1659. An assignment by a husband to his wife of salary and fees to be earned by him, though valid in the State of California, does not serve to prevent the whole of the salary and fees from being taxed as income to the husband, for tax consequences cannot be attached to any "arrangement by which the fruits are attributed to a different tree from that on which they grew." Lucas v. Earl, 281 U.S. 111, 115, 50 S.Ct. 241, 74 L.Ed. 731. Where the grantor of a trust remains *in substance* the owner of the trust corpus the income of the trust is taxable to him. Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788. Culbertson, Lucas and Clifford are all cases illustrative of the principle that a transaction must be judged by its substance, rather than its form, for income tax purposes.

Here, as in Helvering v. Horst, 311 U. S. 112, 116, 61 S.Ct. 144, 85 L.Ed. 75, the petitioner when he received his $112,000 in fact received payment for services rendered, and he cannot escape tax upon what he received as ordinary income by assigning his right to the income in advance of payment. Consult Fisher v. Commissioner, 6 Cir., 209 F.2d 513, and cases there cited.

What we have said here in no manner qualifies the conceded right of the taxpayer to employ any legal method of doing business he may select for the purpose of avoiding or minimizing taxes. But the means he employs must not be mere subterfuge or sham. Particelli v. Commissioner, 9 Cir., 212 F.2d 498, 500.

We hold that the sum of $112,000 received by the petitioner as a result of the assignment of March 23, 1945, is taxable to Paul W. Trousdale and to his wife, Marguerite R. Trousdale, one-half to each, as ordinary income. Accordingly the judgment of the Tax Court is affirmed and the petitions for review are dismissed upon the merits.