OPINION. Rice, Judge: Whether the respondent erred in determining that over 90 per cent of the total sales price received by the stockholders of Amusement upon the sale of their stock to CBS and Columbia Records, Inc., was compensation to petitioner for services is essentially a question of fact. The respondent based his determination and so argues on brief that this factual question is to be decided within the framework of the broad general principle of tax law that the substance of a transaction rather than its form is determinative of its tax consequences. The petitioner accepts this posture of the case but argues that the respondent’s determination is arbitrary and without foundation in fact, within the meaning of Helvering v. Taylor, 293 U.S. 507 (1935). The record in this case contains the depositions of Paley, CBS’s board chairman; Trammell, the president of NBC; Lew Wasserman, the president of MCA, petitioner’s agent; George W. Whiteside, American’s general counsel; and Paul Hahn, American’s executive vice president at the time the transaction in question occurred. It likewise contains all relevant documents. At the hearing, Taft Schreiber, vice president of MCA and the person responsible for handling petitioner’s personal contract negotiations; Myrt Blum, petitioner’s business manager; Sylvan Oestreicher, one of the stockholders of Amusement; Loyd Wright, another stockholder and petitioner’s attorney; and, petitioner himself, all testified at great length and were subjected to exhaustive cross-examination. There is no conflict between the testimony of the various witnesses, the depositions, and the documentary evidence. All of the evidence before us establishes beyond doubt that the substance of the transaction here in question was accurately and completely reflected by the form in which it occurred. We, therefore, can find no justification for the respondent’s determination that some 90 per cent of the total sales price received by petitioner and the other three stockholders represented compensation for petitioner’s services. We agree with the petitioner that that determination is without foundation in fact and cannot stand. The respondent, on brief, requested that we make an ultimate finding of fact that $2,054,000 of the amount paid by CBS and Columbia Records, Inc., “was compensation for [petitioner’s] services in effecting a move of the Jack Benny Program to the CBS network and for rendering his services thereafter on the CBS network.” There is abundant testimony in this record that neither petitioner nor any person acting for him even intimated that he would attempt to persuade the American Tobacco Company, which, in fact, selected and contracted and paid for the network facilities on which the Benny show was broadcast, to switch the program from NBC to CBS. Petitioner had no part in the negotiations between CBS and American which led to moving the program to the CBS network in January 1949. It is equally well established that neither petitioner nor anyone acting for him promised that he would refrain from exercising his so-called veto power should American attempt to switch the broadcasting facilities of the program. It is also a fact that petitioner’s future services, subsequent to the sale of Amusement’s stock, were never discussed or bargained for during the negotiations. To the contrary, when that subject was mentioned in the course of the negotiations with NBC, Loyd Wright threatened to end negotiations immediately if petitioner’s services were to be the subject of discussions incident to the sale of the stock. For more than a year and a half prior to the sale and for some 5y2 years thereafter, petitioner’s only contract for his personal services was with the American Tobacco Company. Paley testified: it was made perfectly clear to me by Mr. Wasserman in tbe first instance that in tbe purchase of Amusement Enterprises, Inc., in no way was I acquiring the services of Jack Benny. In answer to the question: is the Court to understand from your testimony that you * * * took a calculated risk as to whether or not you might be able to obtain a switch of the Lucky Strike program from NBC to CBS? Paley replied: I would say that was putting it pi-cuy well, that in addition to the assets which we acquired by the purchase of Amusement Enterprises, I had high hopes that we might induce the American Tobacco Company to switch its Jack Benny program from NBC to CBS. And to the further question: But at the time the contract was concluded there was no certainty that you could obtain a switch of the program? he replied: None whatsoever. To that extent, using your language, it was a calculated risk. The respondent argues that the question presented here is the same as in Beals’ Estate v. Commissioner, 82 F. 2d 268 (C. A. 2, 1936); and Particelli v. Commissioner, 212 F. 2d 498 (C. A. 9, 1954). In the Beals case, it was decided that a part of the purchaser’s stock received by the selling stockholders of an ice cream company was in payment for their personal agreement not to compete with the purchaser for a period of years; and, hence, that the fair market value of the stock received for that promise was taxable to them as ordinary income. In the Particelli case, the court decided that the major part of the purchase price which the seller of a winery received was in payment for the wine and, hence, taxable as ordinary income. The holding of those two cases, that a part of the purchase price received by sellers upon the sale of capital assets was taxable as ordinary income, is the result which the respondent seeks here. The significant difference in those cases and the one before us is that in those cases there was a sound factual basis on which the conclusions rested. Here there is no factual basis for the determination which the respondent made. To the contrary, there is abundant specific evidence that the entire amount paid for the stock was exclusively for stock of a bona fide corporation. In addition, it is also true that the amount paid for the stock was substantially equivalent to the fair market value thereof, which is another reason why we believe that no part of such amount represented compensation for petitioner’s services or for his promise to do or to refrain from doing something. Amusement’s contract with American was its most valuable income-producing asset but the value of that contract was not reflected on its balance sheet. It may be true that the value of that contract was not equivalent to the anticipated total net earnings therefrom for the remaining 5% years which it had to run because of cancellation possibilities should American’s contract with petitioner end. It is, nevertheless, clear that the value of the contract in 1948, together with Amusement’s other assets, far more nearly approximated the price which CBS paid for the stock than did the mere book value of Amusement’s assets. In addition to the assets of Amusement, there was an additional value which its stock had to CBS in that CBS’s other broadcast periods on Sunday night would be more valuable with the Jack Benny Show as the “kick-off program.” Also underlying the respondent’s determination of the deficiency is his belief that the whole transaction here in question was a deliberate scheme for improper tax avoidance. We think there is no question but that the selling stockholders and those acting for them, as well as NBC and CBS, were all conscious of the tax consequences of the sale of the stock. We, however, cannot agree with the respondent’s suggestion that the petitioner’s concern over the consequences of the sale, taxwise, raises sinister implications that the outward appearance of the transaction was merely a cloak for a deliberate scheme of tax avoidance. We appreciate the respondent’s diligence in guarding the revenues; but it has long been recognized that a taxpayer may decrease the amount of what otherwise would be his taxes or altogether avoid them by any means which the law permits. Commissioner v. Tower, 327 U. S. 280 (1946); Gregory v. Helvering, 293 U. S. 465 (1935). Reviewed by the Court. Decision will be entered under Bule 50. Withey, /., concurs in the result. Oppek and Piekce, JJ., dissent. Atkins, /., did not participate in the consideration of or decision in this report.