GEORGE D. SEYBURN AND FLORENCE SEYBURN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6968–65. Filed January 9, 1969.

*Miles Jaffe*, for the petitioners.
*Chauncey W. Tuttle, Jr.*, for the respondent.

OPINION

WITHEY, *Judge:* Respondent determined a deficiency in petitioners' income tax for the years and in the amounts as follows:

| Year | Deficiency |
| --- | --- |
| 1960 | $9,342.65 |
| 1961 | 1,635.65 |

As a result of a stipulation by the parties, there is no deficiency due from or overpayment due to petitioners for the taxable year 1961. The only issue remaining for decision is whether petitioner George D. Seyburn's attempted assignment of a portion of his partnership interest to two charities was adequate to relieve him from tax liability respecting a portion of his partnership distributive income.

All the facts have been stipulated and are found accordingly.

Petitioners are husband and wife who resided in Detroit, Mich., at the time the petition was filed. They reported their income and receipts on the cash basis method of accounting. For the taxable year ended December 31, 1960, they filed a joint income tax return with the district director of internal revenue at Detroit, Mich. Inasmuch as Florence Seyburn is joined here only by virtue of such joint return, the term "petitioner" will hereinafter be used to designate George D. Seyburn.

By a written agreement dated October 3, 1956, petitioner, Louis Berry, Harold Berry, David M. Miro, and Jack Caminker formed a joint venture taxable as a partnership under the name National Bank Building Co. (hereinafter referred to as the partnership). The partnership agreement provided that the investment of the partners and distributive shares of partnership profits, gains, and losses were to be as follows:

| Partner | Percentage interest |
| --- | --- |
| George D. Seyburn | 45 |
| Louis Berry | 40 |
| Harold Berry | 5 |
| David M. Miro | 5 |
| Jack Caminker | 5 |

The partnership's principal asset was an office building located in Jackson, Mich., which the partnership was purchasing under a land contract entered into in October 1956. The partnership owned and operated this office building from October of 1956 until January 27, 1960. The principal tenant of the bank building was the National Bank of Jackson, Mich. (hereinafter referred to as the bank). The partnership's lease with the bank called for a payment to the partnership of a base rental against a percentage rent of 6 percent of gross earnings.[1]

---

[1] The record discloses that the bank's lease established a monthly rental of $1,291.66, or 6 percent of gross earnings, whichever was the greater amount.

The partnership elected a taxable year ending December 31, and elected the cash basis method of accounting. The partnership's return of income was filed with the district director of internal revenue at Detroit, Mich., for each of its taxable years 1956 through 1960. The partnership terminated and dissolved during the calendar year 1960, subsequent to June 14 of that year.

By instruments dated January 27, 1960, for a consideration of $40,000 paid the same day, the partnership assigned its vendee's interest in the above-described land contract together with its lessor's interest in all leases on the subject premises to NBJ Building Co., a Michigan corporation. [2] After the partnership sold its office building on January 27, 1960, and distributed the sale proceeds, its only remaining asset was the unreceived rental payment from the bank due for the calendar year 1959. Neither at the time of the assignment nor at any time thereafter did the partnership assign any rents due from the bank for the year ended December 31, 1959. The assignment of leases specifically reserved to the partnership all rents due from the bank for that year. The shareholder of NBJ Building Co., and its principal officers and directors, were not related to any members of the partnership.

On January 28, 1960, by instruments entitled "Assignment of Interest in Joint Venture," petitioner gratuitously assigned a portion of his rights in the partnership to two charities, the Jewish Welfare Foundation of Detroit (hereinafter sometimes referred to as the federation), a Michigan nonprofit corporation, and Congregation Shaarey Zedek, a Michigan ecclesiastical corporation (hereinafter referred to as the congregation). Each instrument recited that petitioner:

for valuable considerations, does hereby give, assign and transfer * * * an undivided * * * [15 percent to the federation and 7½ percent to the Congregation] in and to the whole of a joint venture conducted under the style and name of National Bank Building Company, of Jackson, Michigan, with full substitution in the premises to ask for, receive and demand the benefits and emoluments thereof.

At the end of each of the instruments of assignment, the respective charities accepted their gift in the following language:

The undersigned * * * does hereby accept the foregoing gift and transfer, with the express understanding that it shall not be liable to any person, firm or corporation by virtue of this acceptance, but shall be entitled to receive the benefits thereof and the related distributed share of the assets thereof, after payment of all just debts of said joint venture.

In each case, the acceptance was dated January 28, 1960, and was followed by the signature of an officer of the respective charity.

As of January 28, 1960, a dispute existed between the partnership and the bank as to the amount of percentage rent due the partnership

---

[2] The entire $40,000 was distributed to the partners on Jan. 27, 1960.

for 1959. The dispute was finally settled and compromised during the year 1960, at a time subsequent to January 28, 1960. Pursuant to the agreement reached, the partnership on the following dates, received the following amounts from the bank in payment of the 1959 rental: February 2, 1960—$78,161.29; June 10, 1960—$10,844. During its taxable year ending December 31, 1960, the partnership made the following distributions to petitioner:[3] January 27, 1960—$18,000; February 8, 1960—$16,875; June 14, 1960—$3,150. During the partnership year ended December 31, 1960, which was its final year, and on dates subsequent to January 28, 1960, the partnership made distributions to the federation and the congregation in the total amount of $40,050. Of that amount, $20,025 was attributable to the interest which is claimed to have been transferred to the two charities by petitioner.[4] The amounts and dates of the distributions made to the charities and attributable to petitioner's purported assignment were as follows:

| Federation | | Congregation | |
|---|---|---|---|
| Distribution date | Amount received | Distribution date | Amount received |
| Feb. 22, 1960 | $11,250 | Feb. 22, 1960 | $5,625 |
| June 14, 1960 | 2,100 | June 14, 1960 | 1,050 |
| | 13,350 | | 6,675 |

On its 1960 return of income the partnership reported, as distributive shares of ordinary income, the total amount paid the two charities pursuant to the instruments of assignment signed by petitioner and other members of the partnership. Included in the amounts so reported was the $13,350 and the $6,675 paid to the charities pursuant to petitioner's assignments.

On petitioner's income tax return for 1960, he did not include as income any of the amounts paid to the two charities as a result of his assignment, i.e., $13,350 to the federation and $6,675 to the congregation, including in his reported gross income only that portion of the partnership income paid directly to him as indicated on the partnership return and deducted, as a charitable contribution, the amount paid to the two charities as a result of his purported assignments.

In his notice of deficiency, respondent allowed petitioner to deduct, as a charitable contribution in 1960, the full amount paid to the federation and the congregation by the partnership pursuant to petitioner's assignments dated January 28, 1960. However, respondent

---

[3] While distributions were made to the other individual partners on those same dates, no purpose would be served by enumerating the respective amounts thereof.

[4] While the facts reveal that in addition to petitioner, two other partners assigned a portion of their rights in the partnership to the federation and the congregation, it would serve no purpose to set out either the percentages assigned or the dollar amounts involved.

included those same amounts in petitioner's distributive share of partnership income for 1960.

Respondent contends that petitioner's purported assignment of a half of his partnership interest to the two charities was ineffective to relieve him of the burden of taxation thereon and that the charities were merely the recipients of a portion of petitioner's distributive partnership income. In viewing the transaction as an anticipatory assignment of income, respondent contends that petitioner's distributive share of the rental income should not be diminished by the payments made by the partnership directly to the charities as a result of the instruments of assignment. Petitioner, on the other hand, contends that since a partner's interest in a partnership is a capital asset, and since he effectively transferred one-half of his partnership interest to the two charities, when the partnership subsequently collected the rent due for 1959, he realized no partnership distributive income on that half of the partnership interest which had been transferred. The narrow issue thus presented is whether petitioner's attempted assignment was effective to transfer one-half of his partnership interest to the two charities.

While we agree with petitioner that the gratuitous transfer of a partnership interest is ordinarily not a taxable event to the donor, we cannot agree that what was done by petitioner on January 28, 1960, constituted the transfer of a partnership interest. On January 27, 1960, the partnership disposed of its sole operating asset, the bank building, and on that same day distributed the entire proceeds of sale. When, on the following day, petitioner purportedly assigned half of his partnership interest to the two charities, the partnership was in the process of liquidation, its only asset being an account receivable. We think the situation in the instant case is similar to that presented in *Paul W. Trousdale*, 16 T.C. 1056 (1951), affd. 219 F. 2d 563 (C.A. 9, 1955), where this Court had before it the issue whether the taxpayer's purported assignment of an interest in a liquidating partnership was sufficient to transfer a partnership interest. In answering that issue in the negative, we there stated the following at page 1065:

. Having thoroughly considered all of the actualities, we are firmly convinced that the * * * [petitioner's partnership] was in a state of liquidation at the time the purported assignment took place; that the entire transaction was but a cloak for the purpose of decreasing petitioner's tax on his distributive share of the profits; * * * and that petitioner's so-called assignment of his partnership interest was in fact but an assignment of his distributive share of the income due for personal services previously rendered. The sole aim of the assignment appears to have been to confer upon the assignees the power to collect a portion of the fees due petitioner. The record affords no other conclusion. But it has long been

held that a taxpayer may not avoid his tax liability on income which he has earned by the simple expedient of drawing up legal papers and assigning that income to others. *Commissioner* v. *Tower, supra; Helvering* v. *Horst*, 311 U.S. 112; *Yiannias* v. *Commissioner, supra.* The fundamental principle in all income tax statutes is to tax income to those who earn or otherwise create the right to receive it. *Lucas* v. *Earl*, 281 U.S. 111; *Helvering* v. *Horst, supra; Yiannias* v. *Commissioner, supra.*

In affirming the Tax Court, the Ninth Circuit, after enunciating the principle that the incident of taxation depends on the substance and not the form of the transaction, stated the following:

Thus in the determination of whether a partnership exists for tax purposes, the question is whether "the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise." Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 742 * * *

We think the rationale of *Trousdale* applies with equal force to the instant case. At the time of petitioner's purported assignments to the charities, the partnership was in the process of liquidation with no thought being given to the continuation of its business. Since the substance of the purported transfer was lacking in any business purpose, we think it follows that petitioner did not effectively transfer any portion of his partnership interest to the charities with the result that his attempt to convert ordinary income into a tax-free gift of a capital asset must fail. Petitioner's purported transfer lacks support not only in substance but in form as well. The record nowhere suggests that the partnership agreement was ever amended to include the names of the charities. Nor did the partnership distribute the proceeds of the rental receipts to the charities at the same time the five partners received their share. In this regard, the evidence indicates that the bank settled the rental dispute for $89,005.29, of which $78,161.29 was paid to the partnership on February 2, 1960. Although the partnership in turn distributed these rental proceeds to the five partners on February 8, 1960, the distribution to the charities was not made until February 22, 1960, 2 weeks later. In the absence of any explanation for this fact, it is evident that even in this apparently insignificant aspect, the charities were not treated in the same manner as the five partners.

In light of the foregoing, we must hold that petitioner, by executing the instruments of assignment, merely made an anticipatory assignment of ordinary partnership income to the charities and therefore realized taxable income upon the partnership's subsequent receipt and disbursement of rental income to the charities.

In order to reflect the agreement of the parties that no deficiency is due from petitioner for the taxable year 1961,

*Decision will be entered under Rule 50.*