JOHNNY D. LATZAK AND LINDA W. LATZAK, [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES W. KEITH AND LAURA L. KEITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Latzak v. Commissioner
Docket Nos. 12526-92, 12541-92
United States Tax Court
T.C. Memo 1994-416; 1994 Tax Ct. Memo LEXIS 425; 68 T.C.M. (CCH) 509; August 22, 1994, Filed *425 Decision will be entered under Rule 155. Johnny D. Latzak and Laura L. Keith, pro sese. For respondent: Mark S. Mesler. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies and additions to tax in petitioners Johnny D. Latzak and Linda W. Latzak's Federal income tax and additions to tax for the calendar years 1984 through 1988 in the amounts as follows: Additions to Tax Sec. Sec.
Sec.
Sec. 6653
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(1)(A)
6653(a)(2)
(a)(1)(B)
6661
1984
$ 9,266.28
$ 463.31
--  [1]
--
$ 2,317
1985
16,574.52
828.73
--  [1]
--
4,144
1986
38,820.74
--  $ 1,941.04
--
[1]
9,705
1987
29,878.16
--  1,493.91
--
[1]
7,470
1988
23,372.55
1,168.63
--  --
--
5,843
Respondent determined a deficiency in petitioner Laura L. Keith's Federal income tax for the calendar year 1984 in the amount of $ 1,701, and additions to tax under section 6653(a)(1)[2] of $ 85.05, and under section 6653(a)(2) of 50 percent of the interest on the deficiency. Respondent determined deficiencies and additions in *426 tax in petitioners James W. Keith and Laura L. Keith's Federal income tax and additions to tax for the calendar years 1987 and 1988 in the amounts as follows: Additions to Tax Year
Deficiency
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)
Sec. 6653(a)(1)(B)
1987
$ 1,039
$ 51.95
-- [1]
1988
2,850
-- $ 142.50
--
Many of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for decision: (1) Whether insurance commissions and mortgage placement fees for all years here in issue, and unidentified deposits and journal entries for 1988, reported by petitioner Laura L. Keith, doing business as Greenville Insurance Agency, on her individual or joint Federal income tax returns should be allocated to petitioner Johnny *427 D. Latzak; (2) whether petitioners Johnny D. Latzak and Linda W. Latzak received income as a result of their personal expenses being paid by Greenville Mortgage Corp.; (3) whether petitioners Latzak are liable for the additions to tax for negligence under section 6653(a)(1) for the years 1984, 1985, and 1988, under section 6653(a)(2) for the years 1984 and 1985, and under section 6653(a)(1)(A) and (B) for the years 1986 and 1987, and the petitioners Keith are liable for additions to tax for negligence under section 6653(a)(1) for the years 1984 and 1988, and under section 6653(a)(2) for the year 1984, and under section 6653(a)(1)(A) and (B) for the year 1987; and (4) whether petitioners Latzak are liable for the additions to tax for a substantial understatement of income tax under section 6661 for each of the years 1984, 1985, 1986, 1987, and 1988. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Johnny D. Latzak (Mr. Latzak) and Linda W. Latzak (Mrs. Latzak), husband and wife, who resided in Greenville, Georgia, at the time of the filing of their petition in this case, filed a joint Federal income tax return for each of the taxable years 1984 *428 through 1988 with the Internal Revenue Service Center in Chamblee, Georgia. On the Latzaks' Federal income tax returns for 1986 and 1987, Mr. Latzak is listed as self-employed. On the Latzaks' Federal income tax return for 1988, Mr. Latzak is listed as an insurance agent. Included with each of the Latzak's Federal income tax returns for the years 1984 through 1988 is a Schedule C for an insurance and mortgage brokerage business. Mr. Latzak has been a licensed insurance agent since 1957 and has experience as a general agent selling all lines and types of insurance. Mr. Latzak also has experience as a broker of mortgages. Petitioners James W. Keith and Laura L. Keith resided in Moultrie, Georgia, at the time of the filing of their petition in this case. Laura L. Keith filed an individual Federal income tax return for each of the taxable years 1984 through 1986 with the Internal Revenue Service Center in Chamblee, Georgia. James W. and Laura L. Keith (the Keiths) filed a joint Federal income tax return for each of the taxable years 1987 and 1988 with the Internal Revenue Service Center in Chamblee, Georgia. Mr. Latzak prepared the Latzaks' Federal income tax returns for all years *429 here in issue and one of the individual Federal income tax returns filed by Laura L. Keith. Laura L. Keith (Dr. Keith) is a dentist and is the daughter of Mr. Latzak. James W. Keith is a physician. Neither of the Keiths holds an insurance license. Both Keiths lacked any experience selling insurance or brokering mortgages. From 1981 until 1985, Dr. Keith attended the Medical College of Georgia (the Medical College) in Augusta, Georgia. Dr. Keith used student loans to attend the Medical College. In June 1985, Dr. Keith graduated from the Medical College with a degree in dentistry and began to work as an independent contractor in a dentist's office. She continued to work as an independent contractor until June 1986. From June 1986 until March 1987, Dr. Keith did not practice dentistry as she prepared to take the dentistry board examinations for Tennessee. In March 1987, Dr. Keith opened an office for the practice of dentistry in Memphis, Tennessee. In 1983, on the advice of Mr. Latzak, Dr. Keith established a business called Greenville Insurance Agency (GIA). Mr. Latzak advised her to establish this business in order to create potential tax savings. Also in 1983, Greenville *430 Mortgage Corp. (GMC), a Georgia corporation engaged in the business of mortgage origination, was created. Dr. Keith owned stock in GMC. GIA and GMC both have offices in a 1,800-square foot building in Greenville, Georgia. The two businesses share some of the space. This building, which is located in the commercial part of Greenville, Georgia, has a large lobby, two private offices, two rest rooms, a walk-in safe, and a conference area. The original contribution to GMC was to be $ 20,000, of which Mr. Albert L. Kaleda and Ms. Barbara Chapman each contributed $ 5,000. Dr. Keith's contribution was stated to be a total of $ 10,000, of which $ 500 was equipment, furniture, and fixtures. Mr. Latzak, Mrs. Latzak, and Dr. Keith each had and used an American Express credit card in the name of GMC. Many of the charges made on the GMC credit cards in the names of Mr. and Mrs. Latzak were for their personal expenses. GIA was formed primarily to sell insurance, to purchase real estate for resale or rent, and to broker mortgages. The initial capital of GIA was between $ 14,000 and $ 17,000. In the years here in issue, GIA reported on the Schedule C attached to Dr. Keith's returns, income *431 from collection of accounts receivable, interest, rentals and delay fees, insurance commissions, and mortgage placement fees. Dr. Keith filed for the trade name for GIA. She placed an ad in the part of the local newspaper in which legal notices are placed stating that she had applied for the trade name for GIA. Dr. Keith also applied for a Georgia withholding tax identification number and an employer identification number for GIA for Federal tax purposes. Both of these applications state that Dr. Keith is the owner of GIA. Mr. Latzak sold the insurance at GIA. He was the only licensed insurance agent connected with GIA. Dr. Keith held no insurance agent's license, and it would have been unlawful for her to sell insurance in Georgia. Mr. Latzak also did all the mortgage brokerage work at GIA. He had many years' experience in this area of work, and Dr. Keith had no experience in the mortgage brokerage business. Mr. Latzak and Dr. Keith signed a document entitled General Agent Contract (the contract). Under this contract, Mr. Latzak was appointed as the general agent of GIA. As general agent, Mr. Latzak was given the responsibility to locate insurance carriers for GIA and *432 locate real estate for GIA to purchase for resale or rent. Under the contract, GIA was to "reimburse" Mr. Latzak for insurance commissions earned and property management fees according to a published schedule. There was no schedule of payments set forth in, or attached to, the contract, or any statement of the basis to be used for determining the payments. GIA showed on its records payments to Mr. Latzak of $ 17,263, $ 16,422, $ 14,885, $ 15,244, and $ 20,029 for the years 1984, 1985, 1986, 1987, and 1988, respectively. On a broker questionnaire concerning GIA, Mr. Latzak is listed as the person to contact as to accounting and underwriting questions. Mr. Latzak is also listed as the person "licensed" as an insurance agent, although Dr. Keith is shown as owner of the proprietorship. Although some clients of the insurance business were as far away as Huntsville, Alabama, and Memphis, Tennessee, most of the insurance clients were within a 100-mile radius of Greenville. Dr. Keith did not control any of the income-producing operations of GIA or GMC. The operations of GIA were handled entirely by Mr. Latzak. Dr. Keith would call on the telephone on a regular basis and talk to someone *433 at GIA. Mr. Latzak produced insurance commissions of $ 2,695, $ 5,540, $ 75,801, $ 17,951, and $ 9,951 during the years of 1984, 1985, 1986, 1987, and 1988, respectively, which were reported by GIA. Mortgage placement fees of $ 9,500, $ 27,993, $ 41,691, and $ 33,459 during the years of 1985, 1986, 1987, and 1988, respectively, were produced by Mr. Latzak and reported by GIA as shared by GIA and GMC. Dr. Keith's Federal income tax return for each of the years 1984, 1985, and 1986, and the Keiths' joint Federal income tax return for each of the years 1987 and 1988, contained a Schedule C (Profit or (Loss) From Business or Profession) for GIA, reporting amounts stated to be income and expenses of GIA. GMC had three American Express credit cards which were issued to John D. Latzak, Jr., Dr. Keith, and Mrs. Latzak. John D. Latzak, Jr., is Mr. and Mrs. Latzak's son. Some personal expenses of Mr. and Mrs. Latzak were charged on the American Express credit cards. On March 26, 1992, respondent issued a statutory notice of deficiency to the Latzaks. Among the adjustments made by respondent in the notice of deficiency was the addition to the Latzaks' taxable income for each of the years *434 here in issue of amounts received from insurance commissions, mortgage placement fees, and unidentified deposits and journal entries. [3] Respondent determined that these amounts were taxable to Mr. Latzak, since they were actually earned by him. Petitioners take the position that the amounts were earned by GIA, which was owned and operated by Dr. Keith. Respondent also increased the Latzaks' income as reported by $ 5,297, $ 7,294, $ 5,951, $ 13,412, and $ 7,401 for the years 1984, 1985, 1986, 1987, and 1988, respectively, for income received by them because of payment by GMC of their personal expenses. OPINION For Federal income tax purposes the term "gross income" includes compensation for services and gross income from *435 a business. Sec. 61(a)(1) and (2). It has long been settled that income is to be taxed to the person who earns it. Lucas v. Earl, 281 U.S. 111, 114-115 (1930); see also National Carbide Corp. v. Commissioner, 336 U.S. 422 (1949); Helvering v. Horst, 311 U.S. 112, 115-117 (1940); Helvering v. Eubank, 311 U.S. 122, 124-125 (1940). This proposition has been described as "One of the primary principles of our system of income taxation". Vercio v. Commissioner, 73 T.C. 1246, 1253 (1980). A taxpayer may not avoid tax liability by simply drawing up legal papers assigning to another the income that he has earned. Trousdale v. Commissioner, 16 T.C. 1056, 1065 (1951), affd. 219 F.2d 563 (9th Cir. 1955). Agreements and other financial arrangements between family members must be carefully scrutinized to determine the substance of the transaction, since such arrangements offer the opportunity to shift the incidence of taxation of income from its true earner. Crowley v. Commissioner, 34 T.C. 333, 347 (1960). *436 Such agreements or arrangements will be disregarded when they are more nominal than real. To determine whether a transaction has substance or is merely form, the true intent of the parties as disclosed by all the facts and circumstances must be determined. See Commissioner v. Culbertson, 337 U.S. 733, 742 (1949). In the present case, respondent takes the position that in substance the insurance premiums and mortgage placement fees that were reported by GIA were income of Mr. Latzak, and not income of Dr. Keith, as owner of GIA. The record is far from clear where Dr. Keith obtained the funds to buy stock in GMC, if in fact she paid for such stock, or for the initial capital for GIA. The actual funds came from the sale of a condominium which had been owned by the Latzaks. Dr. Keith showed no understanding of how part of the funds from the sale of the condominium came to her, and Mr. Latzak's explanation did little to show what actually happened. However, respondent on brief did recognize Dr. Keith as owner of GIA and of stock in GMC, stating that the funds for Dr. Keith's investment come from Mr. Latzak. Since respondent recognizes Dr. Keith as *437 the owner of GIA and of stock in GMC, the origin of the funds for her purchase is not material. The record also shows that Mr. Latzak had several judgment creditors in the early eighties seeking to collect from him and had transferred all his assets, even including his residence, out of his name. We conclude from the record as a whole that Mr. Latzak did not have in substance an employee arrangement with GIA, but rather an agreement that was not arm's length that left open the amount he was to receive. It is from this background that we consider who was the true owner of the insurance commissions and mortgage placement fees reported by GIA. Mr. Latzak has a license to sell insurance, while Dr. Keith does not have a license. Lacking such a license, Dr. Keith is forbidden by Georgia law from selling insurance and receiving commissions from the sale of insurance. Ga. Code Ann. sec. 33-23-2(c) and (e) (Michie 1990); Ga. Code Ann. sec. 33-23-4(c) and (e) (Michie Supp. 1993). Mr. Latzak has years of experience in the insurance business and the mortgage placement business, while Dr. Keith has no such experience. Also, Dr. Keith was away at school during some of the years here in *438 issue and away practicing her profession in the other years. Dr. Keith did not attempt to exercise any business control over GIA. In the instant case, it is clear that the insurance commissions and mortgage placement fees were produced by the talents, skill, experience, and efforts of Mr. Latzak. There is nothing in the record to suggest that the income was earned by the efforts of Dr. Keith, or anyone else besides Mr. Latzak. Since the income was clearly earned by Mr. Latzak, unless it is shown that he earned it as an employee of GIA, he is taxable on the income pursuant to the principle established in Lucas v. Earl, supra; see also Ronan State Bank v. Commissioner, 62 T.C. 27 (1974); Shaw v. Commissioner, 59 T.C. 375 (1972); American Savings Bank v. Commissioner, 56 T.C. 828, 839 (1971); Morrison v. Commissioner, 54 T.C. 758, 761 (1970). Based on the record before us, we hold that the amounts received from insurance commissions and mortgage placement fees was properly income to Mr. Latzak. The contract between Mr. Latzak *439 and Dr. Keith, which left open the compensation to be paid to Mr. Latzak, was not of the type persons other than family members would have entered into. In effect, it left open the opportunity for Mr. Latzak to shift to Dr. Keith income he earned or, if advantageous, to keep it for himself. The insurance commissions and mortgage placement fee income were earned by Mr. Latzak and were his income. The record, which is deficient in many areas, is incomplete as to the amounts described in the notice of deficiency as "unidentified deposits" and "journal entries". Neither party has mentioned these adjustments in their briefs. While the parties stipulated the amounts GIA received as insurance commissions and mortgage placement fees, they included nothing concerning the unidentified deposits and journal entries. Respondent's trial memorandum and briefs focus on the insurance commissions and mortgage placement fees and make no mention of the unidentified deposits and journal entries. Petitioners argue that these adjustments were to GIA's income and therefore, income of GIA. The evidence as to the unidentified deposits and journal entries is sparse. However, such evidence, as is in *440 the record, supports petitioners' position that the unidentified deposits and journal entries did not represent income to Mr. Latzak, and we so hold. The next issue is whether petitioners Johnny D. Latzak and Linda W. Latzak received income as a result of personal expenses being paid for them by Greenville Mortgage Corp. Respondent states in her opening brief that petitioners had conceded this issue at trial. We have examined the record and do not consider this to be the fact. The reference to the record cited by respondent deals with the deduction of the amounts by GMC. The record is unclear as to how respondent calculated the amounts to be added to the Latzaks' taxable income as personal expenses paid by GMC. There is little evidence as to what comprises the amounts respondent determined to be personal expenses of the Latzaks paid by GMC. The only evidence presented concerned the existence of the American Express cards. It appears that not all of the personal expenses allegedly paid by GMC were charged to the American Express cards. Mr. Latzak admitted that some of the Latzaks' personal expenses were paid by the GMC American Express card, but claimed the amounts were repaid *441 to GMC. There is no evidence in the record to support petitioners' claim. Petitioners attached to their brief some documents that had not been introduced into evidence. We, therefore, have not considered these documents in arriving at our conclusion. However, we do comment that the documents on their face do not appear to support petitioners' position. We hold for respondent on this issue, because petitioners have failed to carry their burden of proof. An addition to tax for negligence or intentional disregard of rules or regulations is imposed by section 6653(a). Negligence encompasses any failure to reasonably attempt to comply with the Internal Revenue Code, including the lack of due care or the failure to do what a reasonable or ordinarily prudent person would do in a similar situation. McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510. Petitioners bear the burden of providing that they were not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioners have made no such showing. Therefore, based on the record in this case, *442 we uphold respondent's determination of the additions to tax for negligence as to both the Latzaks and Keiths for all years involved. Respondent determined that the Latzaks were liable in each of the years before us for the addition to tax imposed by section 6661(a). The addition to tax imposed by section 6661(a) is equal to 25 percent of the amount of any underpayment attributable to a substantial understatement of income tax. An understatement is defined as the tax required to be shown on the return, less the tax actually shown on the return, reduced by any rebates. Sec. 6661(b)(2)(A). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Section 6661(b)(2)(B) provides that in determining the amount of the understatement, the total understatement is reduced by the items for which the taxpayer had substantial authority for the position taken on the return, or adequately disclosed the relevant facts on the return. The burden is on petitioners to show error in respondent's determination of the addition to tax under section 6661. Rule 142(a); King's Court Mobile Home Park, Inc. v. Commissioner, 98 T.C. 511, 517 (1992). *443 Petitioners offered no evidence with respect to the addition to tax under section 6661 for any of the years here in issue. We therefore hold that respondent's determination of the additions to tax under section 6661 is correct unless, because of adjustments made with respect to issues disposed of by agreement of the parties, the understatement of income tax after a recomputation is insufficient for the section 6661 addition to apply. Decisions will be entered under Rule 155. Footnotes
1. Cases of the following petitioners were consolidated for trial, briefing, and opinion on September 14, 1993: Greenville Mortgage Corp., docket No. 3765-92; Johnny D. Latzak and Linda W. Latzak, docket No. 12526-92; James W. Keith and Laura L. Keith, docket No. 12541-92. On December 14, 1993, Greenville Mortgage Corp., docket No. 3765-92 was severed from the consolidation.↩
1. 50 percent of the interest due on the tax deficiency.↩
2. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
1. 50 percent of the interest due on the tax deficiency.↩
3. The amounts of the insurance commissions and mortgage placement fees received each year by GIA have been stipulated and are not issues herein. The adjustment amount for the alleged unidentified deposits is $ 5,744 for 1988. The adjustment amount for the journal entries is $ 8,746 for 1988.↩